HELEN PALSGRAF, Respondent, *v.* THE LONG ISLAND RAILROAD COMPANY, Appellant.

**Negligence — railroads — passengers — package carried by passenger, dislodged while guards were helping him board train, and which falling to track exploded — plaintiff, an intending passenger standing on platform many feet away, injured as result of explosion — complaint in action against railroad to recover for injuries dismissed.**

A man carrying a package jumped aboard a car of a moving train and, seeming unsteady as if about to fall, a guard on the car reached forward to help him in and another guard on the platform pushed him from behind, during which the package was dislodged and falling upon the rails exploded, causing injuries to plaintiff, an intending passenger, who stood on the platform many feet away. There was nothing in the appearance of the package to give notice that it contained explosives. In an action by the intending passenger against the railroad company to recover for such injuries, the complaint should be dismissed. Negligence is not actionable unless it involves the invasion of a legally protected interest, the violation of a right, and the conduct of the defendant's guards, if a wrong in relation to the holder of the package, was not a wrong in its relation to the plaintiff standing many feet away.

*Palsgraf* v. *Long Island R. R. Co.,* 222 App. Div. 166, reversed.

(Argued February 24, 1928; decided May 29, 1928.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department,

[248 N. Y. 339]    Opinion, per CARDOZO, Ch. J.    [May,

entered December 16, 1927, affirming a judgment in favor of plaintiff entered upon a verdict.

*William Mc Namara* and *Joseph F. Keany* for appellant. Plaintiff failed to establish that her injuries were caused by negligence of the defendant and it was error for the court to deny the defendant's motion to dismiss the complaint. (*Paul* v. *Cons. Fireworks Co.*, 212 N. Y. 117; *Hall* v. *N. Y. Tel. Co.*, 214 N. Y. 49; *Perry* v. *Rochester Lime Co.*, 219 N. Y. 60; *Pyne* v. *Cazenozia Canning Co.*, 220 N. Y. 126; *Adams* v. *Bullock*, 227 N. Y. 208; *Mc Kinney* v. *N. Y. Cons. R. R. Co.*, 230 N. Y. 194; *Palsey* v. *Waldorf Astoria, Inc.*, 220 App. Div. 613; *Parrott* v. *Wells Fargo & Co.*, 15 Wall. 524; *A., T. & S. Fe Ry. Co.* v. *Calhoun*, 213 U. S. 1; *Prudential Society, Inc.*, v. *Ray*, 207 App. Div. 496; 239 N. Y. 600.)

*Matthew W. Wood* for respondent. The judgment of affirmance was amply sustained by the law and the facts. (*Saugerties Bank* v. *Delaware & Hudson Co.*, 236 N. Y. 425; *Milwaukee & St. Paul Ry. Co.* v. *Kellogg*, 94 U. S. 469; *Lowery* v. *Western Union Tel. Co.*, 60 N. Y. 198; *Insurance Co.* v. *Tweed*, 7 Wall. 44; *Trapp* v. *McClellan*, 68 App. Div. 362; *Ring* v. *City of Cohoes*, 77 N. Y. 83; *Mc Kenzie* v. *Waddell Coal Co.*, 89 App. Div. 415; *Slater* v. *Barnes*, 241 N. Y. 284; *King* v. *Interborough R. T. Co.*, 233 N. Y. 330.)

CARDOZO, Ch. J.    Plaintiff was standing on a platform of defendant's railroad after buying a ticket to go to Rockaway Beach. A train stopped at the station, bound for another place. Two men ran forward to catch it. One of the men reached the platform of the car without mishap, though the train was already moving. The other man, carrying a package, jumped aboard the car, but seemed unsteady as if about to fall. A guard on the car, who had held the door open, reached forward to help

him in, and another guard on the platform pushed him from behind. In this act, the package was dislodged, and fell upon the rails. It was a package of small size, about fifteen inches long, and was covered by a newspaper. In fact it contained fireworks, but there was nothing in its appearance to give notice of its contents. The fireworks when they fell exploded. The shock of the explosion threw down some scales at the other end of the platform, many feet away. The scales struck the plaintiff, causing injuries for which she sues.

The conduct of the defendant's guard, if a wrong in its relation to the holder of the package, was not a wrong in its relation to the plaintiff, standing far away. Relatively to her it was not negligence at all. Nothing in the situation gave notice that the falling package had in it the potency of peril to persons thus removed. Negligence is not actionable unless it involves the invasion of a legally protected interest, the violation of a right. " Proof of negligence in the air, so to speak, will not do " (Pollock, Torts [11th ed.], p. 455; *Martin* v. *Herzog*, 228 N. Y. 164, 170; cf. Salmond, Torts [6th ed.], p. 24). " Negligence is the absence of care, according to the circumstances " (WILLES, J., in *Vaughan* v. *Taff Vale Ry. Co.*, 5 H. & N. 679, 688; 1 Beven, Negligence [4th ed.], 7; *Paul* v. *Consol. Fireworks Co.*, 212 N. Y. 117; *Adams* v. *Bullock*, 227 N. Y. 208, 211; *Parrott* v. *Wells-Fargo Co.*, 15 Wall. [U. S.] 524). The plaintiff as she stood upon the platform of the station might claim to be protected against intentional invasion of her bodily security. Such invasion is not charged. She might claim to be protected against unintentional invasion by conduct involving in the thought of reasonable men an unreasonable hazard that such invasion would ensue. These, from the point of view of the law, were the bounds of her immunity, with perhaps some rare exceptions, survivals for the most part of ancient forms of liability, where conduct is held to be at the peril of the actor (*Sullivan* v. *Dunham*, 161 N. Y.

290). If no hazard was apparent to the eye of ordinary vigilance, an act innocent and harmless, at least to outward seeming, with reference to her, did not take to itself the quality of a tort because it happened to be a wrong, though apparently not one involving the risk of bodily insecurity, with reference to some one else. " In every instance, before negligence can be predicated of a given act, back of the act must be sought and found a duty to the individual complaining, the observance of which would have averted or avoided the injury " (MCSHERRY, C. J., in *W. Va. Central R. Co.* v. *State,* 96 Md. 652, 666; cf. *Norfolk & Western Ry. Co.* v. *Wood,* 99 Va. 156, 158, 159; *Hughes* v. *Boston & Maine R. R. Co.,* 71 N. H. 279, 284; *U. S. Express Co.* v. *Everest,.* 72 Kan. 517; *Emry* v. *Roanoke Nav. Co.,* 111 N. C. 94, 95; *Vaughan* v. *Transit Dev. Co.,* 222 N. Y. 79; *Losee* v. *Clute,* 51 N. Y. 494; *DiCaprio* v. *N. Y. C. R. R. Co.,* 231 N. Y. 94; 1 Shearman & Redfield on Negligence, § 8, and cases cited; Cooley on Torts [3d ed.], p. 1411; Jaggard on Torts, vol. 2, p. 826; Wharton, Negligence, § 24; Bohlen, Studies in the Law of Torts, p. 601). " The ideas of negligence and duty are strictly correlative " (BOWEN, L. J., in *Thomas* v. *Quartermaine,* 18 Q. B. D. 685, 694). The plaintiff sues in her own right for a wrong personal to her, and not as the vicarious beneficiary of a breach of duty to another.

A different conclusion will involve us, and swiftly too, in a maze of contradictions. A guard stumbles over a package which has been left upon a platform. It seems to be a bundle of newspapers. It turns out to be a can of dynamite. To the eye of ordinary vigilance, the bundle is abandoned waste, which may be kicked or trod on with impunity. Is a passenger at the other end of the platform protected by the law against the unsuspected hazard concealed beneath the waste? If not, is the result to be any different, so far as the distant passenger is concerned, when the guard stumbles over a valise

1928.]          Opinion, per CARDOZO, Ch. J.      [248 N. Y. 339]

which a truckman or a porter has left upon the walk? The passenger far away, if the victim of a wrong at all, has a cause of action, not derivative, but original and primary.   His claim to be protected against invasion of his bodily security is neither greater nor less because the act resulting in the invasion is a wrong to another far removed.   In this case, the rights that are said to have been violated, the interests said to have been invaded, are not even of the same order.   The man was not injured in his person nor even put in danger.   The purpose of the act, as well as its effect, was to make his person safe.   If there was a wrong to him at all, which may very well be doubted, it was a wrong to a property interest only, the safety of his package.   Out of this wrong to property, which threatened injury to nothing else, there has passed, we are told, to the plaintiff by derivation or succession a right of action for the invasion of an interest of another order, the right to bodily security. The diversity of interests emphasizes the futility of the effort to build the plaintiff's right upon the basis of a wrong to some one else.   The gain is one of emphasis, for a like result would follow if the interests were the same.   Even then, the orbit of the danger as disclosed to the eye of reasonable vigilance would be the orbit of the duty.   One who jostles one's neighbor in a crowd does not invade the rights of others standing at the outer fringe when the unintended contact casts a bomb upon the ground.   The wrongdoer as to them is the man who carries the bomb, not the one who explodes it without suspicion of the danger.   Life will have to be made over, and human nature transformed, before prevision so extravagant can be accepted as the norm of conduct, the customary standard to which behavior must conform.

The argument for the plaintiff is built upon the shifting meanings of such words as " wrong " and " wrongful," and shares their instability.   What the plaintiff must

show is " a wrong " to herself, *i. e.*, a violation of her own right, and not merely a wrong to some one else, nor conduct " wrongful " because unsocial, but not " a wrong " to any one. We are told that one who drives at reckless speed through a crowded city street is guilty of a negligent act and, therefore, of a wrongful one irrespective of the consequences. Negligent the act is, and wrongful in the sense that it is unsocial, but wrongful and unsocial in relation to other travelers, only because the eye of vigilance perceives the risk of damage. If the same act were to be committed on a speedway or a race course, it would lose its wrongful quality. The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension (Seavey, Negligence, Subjective or Objective, 41 H. L. Rv. 6; *Boronkay* v. *Robinson & Carpenter*, 247 N. Y. 365). This does not mean, of course, that one who launches a destructive force is always relieved of liability if the force, though known to be destructive, pursues an unexpected path. " It was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye " (*Munsey* v. *Webb*, 231 U. S. 150, 156; *Condran* v. *Park & Tilford*, 213 N. Y. 341, 345; *Robert* v. *U. S. E. F. Corp.*, 240 N. Y. 474, 477). Some acts, such as shooting, are so imminently dangerous to any one who may come within reach of the missile, however unexpectedly, as to impose a duty of prevision not far from that of an insurer. Even today, and much oftener in earlier stages of the law, one acts sometimes at one's peril (Jeremiah Smith, Tort and Absolute Liability, 30 H. L. Rv. 328; Street, Foundations of Legal Liability, vol. 1, pp. 77, 78). Under this head, it may be, fall certain cases of what is known as transferred intent, an act willfully dangerous to A resulting by misadventure in injury to B (*Talmage* v. *Smith*, 101 Mich. 370, 374)

These cases aside, wrong is defined in terms of the natural or probable, at least when unintentional (*Parrot* v. *Wells-Fargo Co.* [*The Nitro-Glycerine Case*], 15 Wall. [U. S.] 524). The range of reasonable apprehension is at times a question for the court, and at times, if varying inferences are possible, a question for the jury. Here, by concession, there was nothing in the situation to suggest to the most cautious mind that the parcel wrapped in newspaper would spread wreckage through the station. If the guard had thrown it down knowingly and willfully, he would not have threatened the plaintiff's safety, so far as appearances could warn him. His conduct would not have involved, even then, an unreasonable probability of invasion of her bodily security. Liability can be no greater where the act is inadvertent.

Negligence, like risk, is thus a term of relation. Negligence in the abstract, apart from things related, is surely not a tort, if indeed it is understandable at all (BOWEN, L. J., in *Thomas* v. *Quartermaine*, 18 Q. B. D. 685, 694). Negligence is not a tort unless it results in the commission of a wrong, and the commission of a wrong imports the violation of a right, in this case, we are told, the right to be protected against interference with one's bodily security. But bodily security is protected, not against all forms of interference or aggression, but only against some. One who seeks redress at law does not make out a cause of action by showing without more that there has been damage to his person. If the harm was not willful, he must show that the act as to him had possibilities of danger so many and apparent as to entitle him to be protected against the doing of it though the harm was unintended. Affront to personality is still the keynote of the wrong. Confirmation of this view will be found in the history and development of the action on the case. Negligence as a basis of civil liability was unknown to mediaeval law (8 Holdsworth, History of English Law, p. 449; Street, Foundations of Legal Liability, vol. 1,

pp. 189, 190). For damage to the person, the sole remedy was trespass, and trespass did not lie in the absence of aggression, and that direct and personal (Holdsworth, op. cit. p. 453; Street, op. cit. vol. 3, pp. 258, 260, vol. 1, pp. 71, 74.) Liability for other damage, as where a servant without orders from the master does or omits something to the damage of another, is a plant of later growth (Holdsworth, op. cit. 450, 457; Wigmore, Responsibility for Tortious Acts, vol. 3, Essays in Anglo-American Legal History, 520, 523, 526, 533). When it emerged out of the legal soil, it was thought of as a variant of trespass, an offshoot of the parent stock. This appears in the form of action, which was known as trespass on the case (Holdsworth, op. cit. p. 449; cf. *Scott* v. *Shepard*, 2 Wm. Black. 892; Green, Rationale of Proximate Cause, p. 19). The victim does not sue derivatively, or by right of subrogation, to vindicate an interest invaded in the person of another. Thus to view his cause of action is to ignore the fundamental difference between tort and crime (Holland, Jurisprudence [12th ed.], p. 328). He sues for breach of a duty owing to himself.

The law of causation, remote or proximate, is thus foreign to the case before us. The question of liability is always anterior to the question of the measure of the consequences that go with liability. If there is no tort to be redressed, there is no occasion to consider what damage might be recovered if there were a finding of a tort. We may assume, without deciding, that negligence, not at large or in the abstract, but in relation to the plaintiff, would entail liability for any and all consequences, however novel or extraordinary (*Bird* v. *St. Paul F. & M. Ins. Co.*, 224 N. Y. 47, 54; *Ehrgott* v. *Mayor, etc., of N. Y.*, 96 N. Y. 264; *Smith* v. *London & S. W. Ry. Co.*, L. R. 6 C. P. 14; 1 Beven, Negligence, 106; Street, op. cit. vol. 1, p. 90; Green, Rationale of Proximate Cause, pp. 88, 118; cf. *Matter of Polemis*, L. R. 1921, 3 K. B. 560; 44 Law Quarterly Review, 142). There is room for

argument that a distinction is to be drawn according to the diversity of interests invaded by the act, as where conduct negligent in that it threatens an insignificant invasion of an interest in property results in an unforseeable invasion of an interest of another order, as, *e. g.,* one of bodily security. Perhaps other distinctions may be necessary. We do not go into the question now. The consequences to be followed must first be rooted in a wrong.

The judgment of the Appellate Division and that of the Trial Term should be reversed, and the complaint dismissed, with costs in all courts.

ANDREWS, J. (dissenting). Assisting a passenger to board a train, the defendant's servant negligently knocked a package from his arms. It fell between the platform and the cars. Of its contents the servant knew and could know nothing. A violent explosion followed. The concussion broke some scales standing a considerable distance away. In falling they injured the plaintiff, an intending passenger.

Upon these facts may she recover the damages she has suffered in an action brought against the master? The result we shall reach depends upon our theory as to the nature of negligence. Is it a relative concept — the breach of some duty owing to a particular person or to particular persons? Or where there is an act which unreasonably threatens the safety of others, is the doer liable for all its proximate consequences, even where they result in injury to one who would generally be thought to be outside the radius of danger? This is not a mere dispute as to words. We might not believe that to the average mind the dropping of the bundle would seem to involve the probability of harm to the plaintiff standing many feet away whatever might be the case as to the owner or to one so near as to be likely to be struck by its fall. If, however, we adopt the second hypoth-

esis we have to inquire only as to the relation between cause and effect. We deal in terms of proximate cause, not of negligence.

Negligence may be defined roughly as an act or omission which unreasonably does or may affect the rights of others, or which unreasonably fails to protect oneself from the dangers resulting from such acts. Here I confine myself to the first branch of the definition. Nor do I comment on the word " unreasonable." For present purposes it sufficiently describes that average of conduct that society requires of its members.

There must be both the act or the omission, and the right. It is the act itself, not the intent of the actor, that is important. (*Hover* v. *Barkhoof*, 44 N. Y. 113; *Mertz* v. *Connecticut Co.*, 217 N. Y. 475.) In criminal law both the intent and the result are to be considered. Intent again is material in tort actions, where punitive damages are sought, dependent on actual malice — not on merely reckless conduct. But here neither insanity nor infancy lessens responsibility. (*Williams* v. *Hays*, 143 N. Y. 442.)

As has been said, except in cases of contributory negligence, there must be rights which are or may be affected. Often though injury has occurred, no rights of him who suffers have been touched. A licensee or trespasser upon my land has no claim to affirmative care on my part that the land be made safe. (*Meiers* v. *Koch Brewery*, 229 N. Y. 10.) Where a railroad is required to fence its tracks against cattle, no man's rights are injured should he wander upon the road because such fence is absent. (*Di Caprio* v. *N. Y. C. R. R.*, 231 N. Y. 94.) An unborn child may not demand immunity ·from personal harm. (*Drobner* v. *Peters*, 232 N. Y. 220.)

But we are told that " there is no negligence unless there is in the particular case a legal duty to take care, and this duty must be one which is owed to the plaintiff

1928.]          Dissenting opinion, per ANDREWS, J.     [248 N. Y. 339]

himself and not merely to others." (Salmond Torts [6th ed.], 24.)   This, I think too narrow a conception. Where there is the unreasonable act, and some right that may be affected there is negligence whether damage does or does not result.   That is immaterial.   Should we drive down Broadway at a reckless speed, we are negligent whether we strike an approaching car or miss it by an inch.   The act itself is wrongful.   It is a wrong not only to those who happen to be within the radius of danger but to all who might have been there — a wrong to the public at large.   Such is the language of the street. Such the language of the courts when speaking of contributory negligence.   Such again and again their language in speaking of the duty of some defendant and discussing proximate cause in cases where such a discussion is wholly irrelevant on any other theory.   (*Perry* v. *Rochester Line Co.*, 219 N. Y. 60.)   As was said by Mr. Justice HOLMES many years ago, " the measure of the defendant's duty in determining whether a wrong has been committed is one thing, the measure of liability when a wrong has been committed is another." (*Spade* v. *Lynn & Boston R. R. Co.*, 172 Mass. 488.)   Due care is a duty imposed on each one of us to protect society from unnecessary danger, not to protect A, B or C alone.

It may well be that there is no such thing as negligence in the abstract.   " Proof of negligence in the air, so to speak, will not do."   In an empty world negligence would not exist.   It does involve a relationship between man and his fellows.   But not merely a relationship between man and those whom he might reasonably expect his act would injure.   Rather, a relationship between him and those whom he does in fact injure.   If his act has a tendency to harm some one, it harms him a mile away as surely as it does those on the scene.   We now permit children to recover for the negligent killing of the father. It was never prevented on the theory that no duty was owing to them.   A husband may be compensated for

the loss of his wife's services.  To say that the wrong-doer was negligent as to the husband as well as to the wife is merely an attempt to fit facts to theory.  An insurance company paying a fire loss recovers its payment of the negligent incendiary.  We speak of subrogation — of suing in the right of the insured.  Behind the cloud of words is the fact they hide, that the act, wrongful as to the insured, has also injured the company.  Even if it be true that the fault of father, wife or insured will prevent recovery, it is because we consider the original negligence not the proximate cause of the injury.  (Pollock, Torts [12th ed.], 463.)

In the well-known *Polemis Case* (1921, 3 K. B. 560), SCRUTTON, L. J., said that the dropping of a plank was negligent for it might injure " workman or cargo or ship." Because of either possibility the owner of the vessel was to be made good for his loss.  The act being wrongful the doer was liable for its proximate results.  Criticized and explained as this statement may have been, I think it states the law as it should be and as it is.  (*Smith* v. *London & Southwestern Ry. Co.*, [1870–71] 6 C. P. 14; *Anthony* v. *Slaid*, 52 Mass. 290; *Wood* v. *Penn. R. R. Co.*, 177 Penn. St. 306; *Trashansky* v. *Hershkovitz*, 239 N. Y. 452.)

The proposition is this.  Every one owes to the world at large the duty of refraining from those acts that may unreasonably threaten the safety of others.  Such an act occurs.  Not only is he wronged to whom harm might reasonably be expected to result, but he also who is in fact injured, even if he be outside what would generally be thought the danger zone.  There needs be duty due the one complaining but this is not a duty to a particular individual because as to him harm might be expected. Harm to some one being the natural result of the act, not only that one alone, but all those in fact injured may complain.  We have never, I think, held otherwise. Indeed in the *Di Caprio* case we said that a breach of a

1928.]          Dissenting opinion, per ANDREWS, J.    [248 N. Y. 339]

general ordinance defining the degree of care to be exercised in one's calling is evidence of negligence as to every one.   We did not limit this statement to those who might be expected to be exposed to danger.   Unreasonable risk being taken, its consequences are not confined to those who might probably be hurt.

If this be so, we do not have a plaintiff suing by " derivation or succession."   Her action is original and primary. Her claim is for a breach of duty to herself — not that she is subrogated to any right of action of the owner of the parcel or of a passenger standing at the scene of the explosion.

The right to recover damages rests on additional considerations.   The plaintiff's rights must be injured, and this injury must be caused by the negligence.   We build a dam, but are negligent as to its foundations.   Breaking, it injures property down stream.   We are not liable if all this happened because of some reason other than the insecure foundation.   But when injuries do result from our unlawful act we are liable for the consequences.   It does not matter that they are unusual, unexpected, unforeseen and unforseeable.   But there is one limitation. The damages must be so connected with the negligence that the latter may be said to be the proximate cause of the former.

These two words have never been given an inclusive definition.   What is a cause in a legal sense, still more what is a proximate cause, depend in each case upon many considerations, as does the existence of negligence itself.   Any philosophical doctrine of causation does not help us.   A boy throws a stone into a pond.   The ripples spread.   The water level rises.   The history of that pond is altered to all eternity.   It will be altered by other causes also.   Yet it will be forever the resultant of all causes combined.   Each one will have an influence.   How great only omniscience can say.   You may speak of a chain, or if you please, a net.   An analogy is of little aid.

Each cause brings about future events. Without each the future would not be the same. Each is proximate in the sense it is essential. But that is not what we mean by the word. Nor on the other hand do we mean sole cause. There is no such thing.

Should analogy be thought helpful, however, I prefer that of a stream. The spring, starting on its journey, is joined by tributary after tributary. The river, reaching the ocean, comes from a hundred sources. No man may say whence any drop of water is derived. Yet for a time distinction may be possible. Into the clear creek, brown swamp water flows from the left. Later, from the right comes water stained by its clay bed. The three may remain for a space, sharply divided. But at last, inevitably no trace of separation remains. They are so commingled that all distinction is lost.

As we have said, we cannot trace the effect of an act to the end, if end there is. Again, however, we may trace it part of the way. A murder at Serajevo may be the necessary antecedent to an assassination in London twenty years hence. An overturned lantern may burn all Chicago. We may follow the fire from the shed to the last building. We rightly say the fire started by the lantern caused its destruction.

A cause, but not the proximate cause. What we do mean by the word " proximate " is, that because of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point. This is not logic. It is practical politics. Take our rule as to fires. Sparks from my burning haystack set on fire my house and my neighbor's. I may recover from a negligent railroad. He may not. Yet the wrongful act as directly harmed the one as the other. We may regret that the line was drawn just where it was, but drawn somewhere it had to be. We said the act of the railroad was not the proximate cause of our neighbor's fire. Cause it surely was. The words we used were

1928.]        Dissenting opinion, per ANDREWS, J.      [248 N. Y. 339]

simply indicative of our notions of public policy.   Other courts think differently.   But somewhere they reach the point where they cannot say the stream comes from any one source.

Take the illustration given in an unpublished manuscript by a distinguished and helpful writer on the law of torts.   A chauffeur negligently collides with another car which is filled with dynamite, although he could not know it.   An explosion follows.   A, walking on the sidewalk nearby, is killed.   B, sitting in a window of a building opposite, is cut by flying glass.   C, likewise sitting in a window a block away, is similarly injured.   And a further illustration.   A nursemaid, ten blocks away, startled by the noise, involuntarily drops a baby from her arms to the walk.   We are told that C may not recover while A may.   As to B it is a question for court or jury.   We will all agree that the baby might not.   Because, we are again told, the chauffeur had no reason to believe his conduct involved any risk of injuring either C or the baby.   As to them he was not negligent.

But the chauffeur, being negligent in risking the collision, his belief that the scope of the harm he might do would be limited is immaterial.   His act unreasonably jeopardized the safety of any one who might be affected by it.   C's injury and that of the baby were directly traceable to the collision.   Without that, the injury would not have happened.   C had the right to sit in his office, secure from such dangers.   The baby was entitled to use the sidewalk with reasonable safety.

The true theory is, it seems to me, that the injury to C, if in truth he is to be denied recovery, and the injury to the baby is that their several injuries were not the proximate result of the negligence.   And here not what the chauffeur had reason to believe would be the result of his conduct, but what the prudent would foresee, may have a bearing.   May have some bearing, for the prob-

23

lem of proximate cause is not to be solved by any one consideration.

It is all a question of expediency. There are no fixed rules to govern our judgment. There are simply matters of which we may take account. We have in a somewhat different connection spoken of " the stream of events." We have asked whether that stream was deflected — whether it was forced into new and unexpected channels. (*Donnelly* v. *Piercy Contracting Co.*, 222 N. Y. 210). This is rather rhetoric than law. There is in truth little to guide us other than common sense.

There are some hints that may help us. The proximate cause, involved as it may be with many other causes, must be, at the least, something without which the event would not happen. The court must ask itself whether there was a natural and continuous sequence between cause and effect. Was the one a substantial factor in producing the other? Was there a direct connection between them, without too many intervening causes? Is the effect of cause on result not too attentuated? Is the cause likely, in the usual judgment of mankind, to produce the result? Or by the exercise of prudent foresight could the result be foreseen? Is the result too remote from the cause, and here we consider remoteness in time and space. (*Bird* v. *St. Paul F. & M. Ins. Co.*, 224 N. Y. 47, where we passed upon the construction of a contract — but something was also said on this subject.) Clearly we must so consider, for the greater the distance either in time or space, the more surely do other causes intervene to affect the result. When a lantern is overturned the firing of a shed is a fairly direct consequence. Many things contribute to the spread of the conflagration — the force of the wind, the direction and width of streets, the character of intervening structures, other factors. We draw an uncertain and wavering line, but draw it we must as best we can.

Once again, it is all a question of fair judgment, always

keeping in mind the fact that we endeavor to make a rule in each case that will be practical and in keeping with the general understanding of mankind.

Here another question must be answered. In the case supposed it is said, and said correctly, that the chauffeur is liable for the direct effect of the explosion although he had no reason to suppose it would follow a collision. " The fact that the injury occurred in a different manner than that which might have been expected does not prevent the chauffeur's negligence from being in law the cause of the injury." But the natural results of a negligent act — the results which a prudent man would or should foresee — do have a bearing upon the decision as to proximate cause. We have said so repeatedly. What should be foreseen? No human foresight would suggest that a collision itself might injure one a block away. On the contrary, given an explosion, such a possibility might be reasonably expected. I think the direct connection, the foresight of which the courts speak, assumes prevision of the explosion, for the immediate results of which, at least, the chauffeur is responsible.

It may be said this is unjust. Why? In fairness he should make good every injury flowing from his negligence. Not because of tenderness toward him we say he need not answer for all that follows his wrong. We look back to the catastrophe, the fire kindled by the spark, or the explosion. We trace the consequences — not indefinitely, but to a certain point. And to aid us in fixing that point we ask what might ordinarily be expected to follow the fire or the explosion.

This last suggestion is the factor which must determine the case before us. The act upon which defendant's liability rests is knocking an apparently harmless package onto the platform. The act was negligent. For its proximate consequences the defendant is liable. If its contents were broken, to the owner; if it fell upon and crushed a passenger's foot, then to him. If it exploded

and injured one in the immediate vicinity, to him also as to A in the illustration.   Mrs. Palsgraf was standing some distance away.   How far cannot be told from the record — apparently twenty-five or thirty feet.   Perhaps less.   Except for the explosion, she would not have been injured.   We are told by the appellant in his brief " it cannot be denied that the explosion was the direct cause of the plaintiff's injuries."   So it was a substantial factor in producing the result — there was here a natural and continuous sequence — direct connection.   The only intervening cause was that instead of blowing her to the ground the concussion smashed the weighing machine which in turn fell upon her.   There was no remoteness in time, little in space.   And surely, given such an explosion as here it needed no great foresight to predict that the natural result would be to injure one on the platform at no greater distance from its scene than was the plaintiff. Just how no one might be able to predict.   Whether by flying fragments, by broken glass, by wreckage of machines or structures no one could say.   But injury in some form was most probable.

Under these circumstances I cannot say as a matter of law that the plaintiff's injuries were not the proximate result of the negligence.   That is all we have before us. The court refused to so charge.   No request was made to submit the matter to the jury as a question of fact, even would that have been proper upon the record before us.

The judgment appealed from should be affirmed, with costs.

POUND, LEHMAN and KELLOGG, JJ., concur with CARDOZO, Ch. J.; ANDREWS, J., dissents in opinion in which CRANE and O'BRIEN, JJ., concur.

Judgment reversed, etc.