HELEN VAN BUREN, as Administratrix, etc., of GRANT VAN BUREN, Deceased, Appellant, *v.* THE TOWN OF RICHMONDVILLE, SCHOHARIE COUNTY, NEW YORK, Respondent.

Third Department, March 16, 1938.

*J. Ernest Wharton* and *Sharon J. Mauhs* [*Sharon J. Mauhs* of counsel], for the appellant.

*Kniffen, Lamont & Kniskern* [*Milo R. Kniffen* of counsel], for the respondent.

McNAMEE, J. On June 25, 1937, Grant Van Buren was the superintendent of highways of the town of Richmondville, Schoharie county, and was supervising the repair of a town road in that town. William Babcock was operating a dump truck owned by the town in the progress of the work. Babcock drove out of a lane into the highway with a load of stone, at which time Van Buren and another man stood talking in the angle, a few feet from the lane and from the highway. Each was aware of the presence of the other. After the truck turned into the highway, it then started a backward movement along the highway toward the place of repair, about 120 feet distant. The truck was moving at the rate of about two miles an hour passing the lane, and Van Buren began to walk along the side of the road, on the right of the truck, in the same direction, but faster, and then entered upon " a little trot," and " stepped up in back of the truck," when five or six feet from its rear. And when he had taken two or three steps, he stumbled, fell, and failed to rise. At that time the driver was looking to the rear, out of the cab door on the left side of the truck. The body of the truck was so broad the driver could not see behind the truck, and did not see Van Buren. The right rear wheel of the truck passed over Van Buren's body, and caused his death.

There was evidence that the mirror was so placed on the truck as to be of no use then, that the window in the back of the cab was obstructed so as to prevent vision to the rear, and that a practice prevailed in that kind of work not to back a truck unless there was a man stationed behind it to see that the road was clear. By this evidence the defendant sought to establish the negligence of the deceased, on the theory that the Town Law gave to the superintendent charge of the town highways, of their repair, and of the men and machinery employed for that purpose.

The jury rendered a verdict for $15,000 in favor of the plaintiff. The trial judge reserved decision on the motion to dismiss at the close of the testimony, and later granted the motion to set aside the verdict and dismiss the complaint.

The defendant urges the negligence of the decedent, as a matter of law. The proof shows that he had no skill nor experience in the driving of an automobile, was unfamiliar with its operation, and had no license to drive. And the jury might draw from the testimony the inference that he did not sense the necessity of vision from the driver's seat, when a truck was moving backward. He was engaged in the rough work of road building, and the standards and practice in that pursuit may well involve common risks and hazards that would deter and frighten more timid souls of refinement. The decedent fell by accident, and failed to give evidence that he would rise; and what was the nature of his injury, or how badly he was hurt by the fall, is not known. Stepping behind a truck moving at a rate of speed of two miles an hour, at a distance therefrom, and starting " on a little trot " in the same direction, would not be negligence as a matter of law. The distance and the speed of the truck in a given case well might make it so. On a view of all of the evidence, we believe that the negligence of the decedent was a question for the jury.

The negligence of the driver Babcock was shown. The decedent did not know how to run a truck, and he was compelled to leave its operation to the driver who unquestionably did know how. The truck was in good condition and could be stopped within a distance of six or eight inches, when running at the rate of speed stated. It is beyond dispute that the driver was moving the truck backward, that he did not and could not see the road behind his truck, but could see only along the side of it, and could see the left rear wheel only with special effort. Thus he backed the truck without knowing who or what was behind it. The evidence permitted of an inference that the mirror was useless in the circumstances and that the window in the back was obstructed. He resorted to such view as it was possible to get by leaning out of

the cab door. The statute provides for a " mirror or other reflecting device so adjusted that the operator of such vehicle shall have a clear and full view of the road and condition of traffic behind such vehicle." (Vehicle and Traffic Law, § 15, subd. 11.) And again it is provided, " Before backing any vehicle the driver shall see that the way is clear and * * * exercise due vigilance to prevent accident." (Vehicle and Traffic Law, § 83, subd. 3.) That the driver failed to comply with these statutory provisions is evident. And the evidence would warrant the jury in finding that this failure contributed to the injury.

The defendant urged upon the argument that the town was protected from liability under the fellow-servant rule, and accordingly the plaintiff could not recover even though the driver was negligent, citing *Fay* v. *DeCamp* (257 N. Y. 407) and *Erjauschek* v. *Kramer* (141 App. Div. 545). This position cannot be maintained. A superintendent of highways of a town is an independent officer, and not an agent, an employee, or a servant (*Youngman* v. *Town of Oneonta*, 204 App. Div. 96; affd., 236 N. Y. 521), and, therefore, not a fellow-servant. The accident in question occurred in June, 1937. And two prior amendments of the General Municipal Law finally dispose of the question. By the provisions of these enactments, towns became liable, and assumed liability, for the negligence of the driver of a truck in the operation thereof upon its highways in the discharge of a duty imposed on the town; and this was so whether the duty being performed by the driver was a public duty for the benefit of the community, or of no special benefit to the town. (Gen. Municipal Law, §§ 50-a, 50-b; Laws of 1936, chaps. 100, 323.)

In its brief the respondent, anticipating a possible reversal of the order under review, urged a new trial in that event, on the ground that the trial judge made erroneous rulings on the admission and exclusion of evidence. We have examined these questions, and find no substantial error therein.

The order should be reversed, and the verdict reinstated, with costs.

HILL, P. J., and HEFFERNAN, J., concur; CRAPSER and BLISS, JJ., dissent; BLISS, J., in an opinion in which CRAPSER, J., concurs.

BLISS, J. (dissenting). This is an action against the town of Richmondville for having negligently caused the death of the town's superintendent of highways who was killed when a truck owned by the town was backed over him on a highway construction job. The jury returned a verdict against the town but the trial court set it aside and dismissed the complaint on the ground that the

decedent was guilty of contributory negligence as a matter of law and that no negligence of the town was shown. From this order and the judgment entered thereon plaintiff appeals.

The appellant urges that she established upon the trial that the negligence of the defendant was eight-fold: ·

1. The driver of the truck backed " blind " upon a public highway.

2. The driver failed to exercise due vigilance as required by subdivision 3 of section 83 of the Vehicle and Traffic Law.

3. The truck was not equipped with a mirror or other reflecting device so adjusted as to give the driver a clear and full view of the road to the rear as required as subdivision 11 of section 15 of the Vehicle and Traffic Law.

4. The truck had a wood projection extending out for such a distance on each side of the cab that it was impossible for the driver to look to the rear while operating it in reverse.

5. The rear window of the cab of the truck was dirty.

6. The dump body of the truck was piled with stone so high that half of the window in the back of the cab was covered and the driver could not see through it to the rear.

7. There was no signalman or watchman to guide and warn the driver as was customary under similar circumstances.

8. The driver disregarded or failed to see a warning given to him by the operator of a tractor some distance to the rear.

The acts of negligence which the plaintiff thus claims to have proved may be divided into two classes, (1) those chargeable directly to the driver in the operation of the truck and (2) those having to do with the equipment of the vehicle and its use generally. There is no question as to the legal responsibility of the town for the acts of the driver in the operation of the truck. (Gen. Municipal Law, §§ 50-a, 50-b.) There is, however, a serious question as to whether any of such acts were shown to be negligent in their relation to plaintiff's intestate.

At the time of the accident the truck was backing southerly down a narrow town road toward a spot where sub-base was being laid some 150 feet away. It had already backed a distance of 122 feet. It was a Ford truck with a dump body loaded with stone piled so high that a portion of the opening in the body directly back of the window of the cab was covered. The driver had opened the left door of the cab alongside of his seat and was leaning out, looking to the rear as the truck proceeded back at the rate of about two miles per hour. When the driver commenced backing down the road he saw plaintiff's intestate standing some distance off of the road to the east talking with a neighbor and that is the last time he saw him. At that time the road was clear save for a tractor

almost 300 feet away, down by the sub-base. Van Buren then walked in the same direction as the truck was going, out of sight of the driver, until he reached a point just south of the rear end of the moving truck. He there stepped into the road ahead of the right rear wheel of the moving truck, started on a little trot, took two or three steps, stumbled and fell directly in back of this wheel and 5 or 6 feet from it. The operator of the tractor about 150 feet to the south, who was sitting in the cab of the tractor with the motor running, shouted, but there is no proof that the truck driver heard him. As the truck ran over plaintiff's intestate, the driver felt the bump and stopped the truck immediately.

Van Buren thus was in a place of safety in so far as the operation of the truck was concerned as the driver commenced backing. There was nothing in the situation to warn the driver that the town superintendent would leave his place of safety and come within the realm of possible danger from the operation of the vehicle. There is nothing in the facts of this case making his conduct careless as to plaintiff's intestate. There was no more notice to this driver that his manner of driving this vehicle did or could imperil the town superintendent than there was to the station guard in the *Palsgraf* case (*Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y. 339). Anticipatorily there was no reasonable possibility that the interest of the town superintendent, who stood talking with a neighbor about thirty feet from the highway and who had saluted the driver as he drove past him and still stood there when the driver began to back the truck down the road, would be invaded by the operation of the truck. As stated in the *Palsgraf* case (at p. 341): "The conduct of the defendant's guard, if a wrong in its relation to the holder of the package, was not a wrong in its relation to the plaintiff, standing far away. Relatively to her it was not negligence at all. Nothing in the situation gave notice that the falling package had in it the potency of peril to persons thus removed. Negligence is not actionable unless it involves the invasion of a legally protected interest, the violation of a right. ' Proof of negligence in the air, so to speak, will not do.' " That Van Buren would place himself in a position of hazard was not reasonably predictable. " If no hazard was apparent to the eye of ordinary vigilance, an act innocent and harmless, at least to outward seeming, with reference to her, did not take to itself the quality of a tort because it happened to be a wrong, though apparently not one involving the risk of bodily insecurity with reference to some one else. * * * The plaintiff sues in her own right for a wrong personal to her, and not as the vicarious beneficiary of a breach of duty to another." (*Palsgraf* v. *Long Island R. R. Co., supra.*) After the driver saw and waved to the

town superintendent, he again ascertained his position before starting to back his truck. At that time the town superintendent was where he had previously been, in a place of safety, and far from the path of the backing vehicle. The town superintendent was not in the orbit of danger as was disclosed to the " eye of ordinary vigilance " of one in the position of the driver of the truck.

The plaintiff established upon the trial the negligence of her own intestate. Neither the town nor driver was responsible for the condition or equipment of the truck or the lack of a signalman. These responsibilities rested squarely upon the decedent. " All tools, implements and other highway equipment owned either by the town or the highway districts therein, shall be used by the town superintendent in such manner and in such places in such towns as he shall deem best. They shall be under the control of the superintendent and be cared for by him at the expense of the town." (Highway Law, § 142.) Thus, by statute, this truck and its equipment and manner of use generally were all under decedent's immediate personal supervision. If these were not reasonably safe or in any way failed to comply with what reasonable care or statute required, the duty and responsibility of correction and repair were his and his alone. He was the only person who had authority to remedy the defects. The driver was not authorized to expend town funds for the purchase of a mirror or to alter or repair the truck. He took it as it was furnished to him by the decedent. That was the responsibility of the decedent. The town superintendent of highways is not the agent or servant of the town. He is an independent public officer, exercising powers conferred by statute and charged with duties prescribed by law. (*Youngman* v. *Town of Oneonta*, 204 App. Div. 96; affd., without opinion, 236 N. Y. 521.) Thus when the plaintiff proved that the truck and its equipment were defective and such defects contributed to this accident, she proved the failure of decedent himself to properly perform the duties imposed upon him by law.

As to the necessity for a signalman or watchman, here again the decedent was the person whose duty it was to provide such signalman or watchman if one was necessary. He was in complete charge and control of this construction with the power and duty to employ and direct such help as was necessary. (Highway Law, § 140, subd. 4.) He was personally directing the manner of the operation of the truck and the performance of the work. He it was who should say whether a signalman or watchman was necessary and when he failed to provide one here, his representative cannot recover because of this fact.

Aside from all this, his act in stepping ahead of the backing truck on the side opposite the driver and out of his sight, was negligence. He knew where the driver was and that he was out of the driver's sight. It was decedent's stepping in the path of this moving truck, out of the driver's sight, and then stumbling, which caused his death. The trial court correctly held the plaintiff's intestate guilty of contributory negligence as matter of law, and that no negligence chargeable to the town was proven.

The order and judgment should be affirmed.

CRAPSER, J., concurs.

Order and judgment reversed on the law and the facts, with costs, and verdict reinstated.