James D. Hopkins, J.
The plaintiff was walking on March 18,1959, along the sidewalk on Main Street in the City of White Plains. The defendant Cannaughtan was the driver of a trailer truck owned by the defendant McFadden Express Co. Cannaughtan was backing the trailer truck into a parked position at the curb so as to unload a shipment of shoes and make delivery to a store operated by the defendant Thom McAn, Inc. An employee of that store had been assigned by the manager to assist Cannaughtan by guiding him in parking the vehicle. The defendants Wolff owned a store next to Thom McAn, and a drain covered by a metal grate ran across the sidewalk, discharging water collected from the roof of the Wolff store. The curb and sidewalk at the point of the drain were broken and in part missing; the metal grate was loose. The left rear wheel of the trailer struck and mounted the end of the grate at the curb, catapulting the other end of the grate at the store line into the air; the plaintiff, walking on the sidewalk near the Wolff store, was hit by the grate and thrown off his feet, sustaining injuries for which he seeks damages in this action.
Prior to the trial the action was discontinued as to the defendant G-aynor, since she had no interest in any store served by the drain. The ease was tried by the court without a jury under a stipulation of the parties. At the trial, by consent of the plaintiff, the complaint was dismissed as to the defendant City of White Plains. In the pleadings of certain of the defendants cross complaints are alleged against certain other codefendants. The court reserved decision at the end of the trial on the motions for judgment made on behalf of all the parties.
*819 The foundation of liability for negligent conduct must be analyzed to meet the question of whether all, or some, or none, of the defendants must respond to the plaintiff for his damages. The plaintiff has joined the defendants on the theory that their concurrent negligence caused his injuries. If, indeed all of them were negligent in their relation to the plaintiff, and their negligence was the legal cause of plaintiff’s injuries, the defendants would be jointly liable in damages (Slater v. Mersereau, 64 N. Y. 138; Sider v. General Elec. Co., 203 App. Div. 443, 448; Barnes v. Masterson, 38 App. Div. 612; Kaszovitz v. Trustees of Sailors’ Snug Harbor, 127 Misc. 818; Prosser, Joint Torts and Several Liability, 25 Calif. L. Rev. 413, 432-433). “ Although they acted independently of each other, they did act at the same time in causing the damages, etc., each contributing towards it, and although the act of each, alone and of itself, might not have caused the entire injury, under the circumstances presented, there is no good reason why each should not be liable for the damages caused by the different acts of all.” (Slater v. Mersereau, 64 N. Y. 138, 146, supra.)
Our task is, accordingly, to determine whether the conduct of each defendant toward the plaintiff constituted actionable negligence. In the setting of this case, the rare and unusual result of a combination of forces, we must search the doctrine of negligence to its limits; we are bound, nevertheless, by those limits, no matter how attractive metaphysical speculation might be. ‘ ‘ The lawyer cannot afford to adventure himself with philosophers in the logical and metaphysical controversies that beset the idea of cause.” (Pollock, Torts [11th ed.], 36.)[1]
In New York, at least, the bounds of actionable negligence were set in Palsgraf v. Long Is. R. R. Co. (248 N. Y. 339). Judge Cabdozo, speaking for the majority (p. 342), found that negligence is relative between individuals. “ If no hazard was apparent to the eye of ordinary vigilance, an act innocent and harmless, at least to outward seeming, with reference to her, did not take to itself the quality of a tort because it happened to be a wrong though apparently not one involving the risk of bodily insecurity with reference to some one else.” In his view, a negligent defendant is liable only in the event that the plaintiff’s injury is the result of what the defendant could have reasonably foreseen to have been within the scope of the risk created by the act. Judge Andeews, speaking for the minority, held that once *820 the defendant’s negligence is established, he is responsible for all of its effects, whether foreseeable or not, following the rule stated by the English court in Matter of Polemis ([1921] 3 K. B. 560).[2]
Although Palsgraf was decided by a four to three vote by the Court of Appeals, it has been dutifully respected by later cases in New York (e.g., Matter of Babington v. Yellow Taxi Corp., 250 N. Y. 14; Lane v. City of Buffalo, 232 App. Div. 334, 338; Luce v. Hartman, 5 A D 2d 19, 22), and the view it represents prevails in most of the states (see James and Perry, Legal Cause, 60 Yale L. J. 761, 787).[3] Recently, moreover, the opposing rule of Polemis was said not to “ be regarded as good law ” by the Privy Council in England (Overseas Tank Ship [U. K.] v. Morts Dock & Eng. Co., [1961] 2 Weekly L. R. 126, 138).[4]
We approach the question of each defendants’ liability therefore, with regard to the tests espoused in Palsgraf: (1) did the defendant breach a duty owed to the plaintiff; and (2) could the defendant have reasonably foreseen the consequence of injury to the plaintiff following the breach of the duty. In applying the tests, we must also recall the warning stated in O’Neill v. City of Port Jervis (253 N. Y. 423, 433): “Legal or proximate cause is always dependent upon the facts of a particular case, and it is for this reason that the words are beyond definition or conclusive explanation. Very often it is confused with the preliminary question whether there is any negligence at all.”[5]
*821 I
THE NEGLIGENCE OF THE DEFENDANTS WOLFF
The defendants Wolff owned the store which "was served by the drain crossing the sidewalk. It is familiar law that the owners of premises benefited by the use of a public sidewalk for a special purpose, such as for a drain, must inspect it and maintain it in a reasonably safe condition (Trustees of Canandaigua v. Foster, 156 N. Y. 354; Olivia v. Gouze, 285 App. Div. 762, affd. 1 N Y 2d 811; Herman v. Chal Associates, 262 App. Div. 841, affd. 287 N. Y. 720; Wylie v. City of New York, 286 App. Div. 720). “ But "whoever, even by due permission, cuts a hole in the sidewalk for the benefit of his adjoining property must use reasonable care to protect the public from danger on account thereof. Reasonable care requires that he should provide a proper covering, inspect it from time to time, and repair it when necessary, as otherwise passersby, for whose benefit the sidewalk is maintained, may be injured.” (Trustees of Canandaigua v. Foster, 156 N. Y. 354, 361, supra.)
Here the evidence is that the sidewalk and curb were broken around the drain. An inspector of the City of White Plains testified that a part of the curb one foot long by five inches high was missing, as well as a part of the sidewalk six inches wide and one foot long, at the point where the drain met the curb. The conditions were such as to warrant the inference that they existed for considerable time prior to the occurrence whereby the plaintiff was injured (cf. Becker v. Liscio, 223 App. Div. 698; Adams v. Misena Realty Co., 239 App. Div. 633). In addition, the defendant Joseph Wolff, who testified thát he was in charge of the property on behalf of the owners, said that he visited the property on rare occasions, and could not tell when he had last observed the drain, thus indicating that he had not met the duty of reasonable inspection cast on him. Although he also said that he had no knowledge concerning the defective condition of the drain, a fair conclusion of constructive notice under all the circumstances is justified with respect to the defendants Wolff, since the condition of the sidewalk, curb, and drain was patent (Sapego v. Incorporated Vil. of Mount Kisco, 260 App. Div. 931, affd. 286 N. Y. 599; Liwer v. Roxy Cleaners & Dyers Co., 6 A D 2d 931; Napoli v. City of New York, 144 N. Y. S. 2d 110, 114). As plaintiff, a pedestrian using the sidewmlk, was within the class of persons to whom the defendant owners owed a duty of reasonable care, they are liable to him for such injuries which he suffered and which were reasonably foreseeable as a result of the breach of the duty.
*822 Given the loose condition of the grate covering the drain and the broken curb and sidewalk about it, it was within the orbit of reasonable foreseeability that a vehicle might mount the curb and raise the grate into the air, endangering the safety of pedestrians. The intervening act of the defendant Cannaughtan, though independent, could not have caused the harm to plaintiff without the pre-existing condition attributable to the owners’ neglect (cf. De Haen v. Rockwood Sprinkling Co., 258 N. Y. 350; Matter of Guardian Cas. Co., 253 App. Div. 360; Solomon v. Branfman, 175 N. Y. S. 835). “ Liability is not defeated by the fact that the thing could not be moved without the cooperative negligence of others (Sweet v. Perkins, 196 N. Y. 482),” as was said in De Haen v. Rockwood Sprinkling Co. (258 N. Y. 350, 353, supra).
Accordingly, it is held that the defendants Wolff are liable to the plaintiff.
II
THE NEGLIGENCE OF THE DEFENDANTS CANNAUGHTAN AND MC FADDEN EXPRESS CO.
As driver and owner of the vehicle connected with the incident, their liability, if any, to the plaintiff is indistinguishable (Vehicle and Traffic Law, § 59 [now § 388]). The defendant Cannaughtan prior to the incident had requested the manager of the Thom McAn Store to send an employee to assist him in parking the trailer truck; the manager assigned Collins, a clerk, to watch. Cannaughtan then drew the trailer ahead and backed it, a vehicle some 46 feet long, into a space about 50 feet in length in front of and near the Thom McAn store. Collins was asked to give a warning if the trailer was about to strike a hydrant at the curb near the store, or automobiles parked at either end of the space. Cannaughtan testified that, while backing the trailer, due to the position of the cab, he was unable to see the rear of the trailer at all times. A witness to the incident, David R. Baker, testified that he saw the trailer pull back and forth to the curb, and that the rear left wheel mounted the curb, lifting the grate each time that the wheel rolled over it; Baker saw the wheel lift the grate some two feet in the air the last time and strike the plaintiff. There is no evidence that Cannaughtan or Collins had any knowledge of the defective condition of the grate before the happening of the incident.
*823 Under settled common-law principles, Cannaughtan was charged with the duty of operating his vehicle with reasonable care. Specifically, he was bound to use caution in backing his vehicle, particularly because of its size, and because he was not able to see its rear at all times (Waller v. Feiss, 286 N. Y. 563; Gough v. Anson’s Dairy, 11 A D 2d 859; Van Buren v. Town of Richmondville, 253 App. Div. 484; Armieri v. Mertens, 245 App. Div. 906; 4 N. Y. Jur., Automobiles, § 327, pp. 312-313). He recognized the risk by enlisting the aid of Collins (cf. Katapodis v. La Salle Trucking Corp., 293 N. Y. 229). Although the testimony is that he requested Collins to guide him so far as avoiding the hydrant and the parked cars, manifestly, he also had the duty of not running the vehicle on the sidewalk at the risk of harm to pedestrians. The plaintiff was thus within the class of persons to whom Cannaughtan owed a duty.
Although Cannaughtan denied that the vehicle mounted the sidewalk, the other testimony of Baker, the plaintiff, and Collins is to the contrary. Moreover, Cannaughtan’s testimony was that such was his control and experience that he could determine from the sensation of the steering wheel whether a wheel went over a curb. Baker testified that the wheel of the truck mounted the curb not once, but at least two or three times.
For Cannaughtan to be held liable it is not necessary that the plaintiff must have been injured as a result of a collision with the truck as the most natural consequence of the breach of duty. ‘ ‘ Foreseeability does not mean that the precise hazard or the exact consequences which were encountered should have been foreseen.” (2 Harper and James, Torts, § 20.5, pp. 1147-1149); cf. Hill v. Winsor, 118 Mass. 251).[6] Thus it was said in Miller v. Gonzalez (9 Misc 2d 190) that it was a question of fact for a jury to decide whether the defendant in backing his car in a parking area Avas negligent in running over a bottle, causing broken glass to hit the plaintiff, a pedestrian, in the face.[7]
Moreover, Cannaughtan was obliged to observe certain statutory duties (Vehicle and Traffic Law, §§ 1162, 1202, subd. [a]; *824 § 1211).[8] Sections 1162 and 1211 of the Vehicle and Traffic Law in substance embody the common-law duties imposed on an operator of a motor vehicle while backing, but section 1202 (subd. [a]) thereof charges-him with the specific duty of not parking or stopping on a sidewalk. The predecessor of these statutes (Vehicle and Traffic Law, § 86) was given a broad construction' in Mullen v. Fayette (275 App. Div. 527, affd. 300 N. Y. 501), where a driver who parked his truck on a sidewalk was held liable for the injuries of the plaintiff, a pedestrian, who was thus compelled to walk in the highway and was struck by a bicycle.
' We are aware of the rule that not-every breach of a statutory duty results ipso facto in liability. It must be shown that the person injured came within the class of persons intended to be safeguarded, that his injury was the kind apprehended and that it resulted from the violation of the statute (Boronkay v. Robinson & Carpenter, 247 N. Y. 365, 368; Di Caprio v. New York Cen. R. R. Co., 231 N. Y. 94, 97; Lang v. New York Cen. R. R. Co., 227 N. Y. 507). Here the plaintiff was obviously within the class of persons intended to be protected by the statutes; and obviously, if Cannaughtan had not driven the trailer on the sidewalk, the grate would not have risen in the air. We think, too, that the Legislature intended to safeguard pedestrians from the dangers encountered by vehicles mounting a curb; and the presence of grates or openings in sidewalks (a common cotidition) was a danger reasonably to be apprehended, and to be avoided by obedience to the statutory command.
Hence, we conclude that the defendants Cannaughtan and McFadden Express Co", are liable to the plaintiff.
Ill
THE NEGLIGENCE OF THE DEFENDANT THOM MC AN
The liability of the defendant Thom McAn depends on the negligence, if any, of Collins. Thom McAn had no duty, originally, toward the plaintiff. The defendant McFadden Express *825 Co,, was an independent contractor in making the delivery of the, shipment to Thom Me.An. The question comes down to what the effect avus, so far as the plaintiff was concerned, by the assumption by Thom McAn of the task of guiding Cannaughtan in the backing operation of the trailer truck.
An early case in New York held that one Avho undertakes to do an act for another, without reward, is not liable if doing it amiss (Thorne v. Deas, 4 Johns. 84 [1809]; Chancellor Kent) . But in the instant case Collins not only undertook the task, by direction of his superior, but also actually engaged in carrying out the task. Once having begun the assignment, Collins was bound to execute it carefully (O’Leary v. Erie R. R. Co., 169 N. Y. 289; Siegel v. Spear & Co., 234 N. Y. 479; Zelenko v. Gimbel Bros., 158 Misc. 904, affd. 247 App. Div. 867). “ It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all”. (Glanzer v. Shephard, 233 N. Y. 236, 239.)
In O’Leary v. Erie R. R. Co. (169 N. Y. 289, 293, supra) it was said that “ The defendants had voluntarily assumed to perform the first step in the sequence of acts, in which the plaintiff’s act Avould be the second, and knoAvn to defendant to be a dangerous one if the first should be negligently performed. Hence, the duty of reasonable care rested upon defendant, and under the circumstances reasonable care Avas the defendant’s customary care, because defendant had notice that plaintiff was accustomed to rely upon it.”
In Eckert v. Farrington Co. (262 App. Div. 9, 12, affd. 287 N. Y. 714) the defendant Avas found to have been negligent in failing to Avarn the plaintiff of an oncoming car which struck the plaintiff while he was changing a tire. There the defendant had undertaken the task of giving due Avarning.[9]
Not only did Collins assume the duty of reasonable care toAvard Cannaughtan, but also toward the plaintiff. Clearly Cannaughtan expected the assumption of that duty toward third parties, because he testified that he asked Collins to watch out for the cars already parked at either end of the space into AAhich the trailer Avas to be parked. Moreover, it became Collins ’ duty to take precautions against any dangerous condition which he saw or had reason to believe aatus developing (cf. Bucci v. Butler, 73 R. I. 60 holding that one Avho directs truck in backing *826 may be liable for negligence in allowing the truck to strike plaintiffs).
The evidence here is that Collins Avas on the sidewalk near the hydrant watching the trailer back in the space, and looking in the direction of the drain. Baker testified, as stated before, that the rear wheel ran up the curb and over the grate several times, and each time the grate was lifted in the air, so much so that his wife tripped over it, and another pedestrian was struck by it. Since these occurrences took place in the plain sight of Collins, he had the duty of stopping the backing operation and warning Cannaughtan of the existing danger. If he had responded to his duty, the plaintiff would not have been injured. We find Collins, therefore, to have breached his duty toward the plaintiff.
Thom McAn argues, however, that under the circumstances here Collins was not its servant, but the servant of Cannaughtan and McFadden Express Co. It is always a perplexing problem whether one who is an employee takes on the character of a special employee of another in the commission of a task of interest to both that person and his employer. The rule has been announced that “ as long as the employee is furthering the business of his general employer by the service rendered to another, there will be no inference of a new relation unless command has been surrendered, and no inference of its surrender from the mere fact of its division ”. (Charles v. Barrett, 233 N. Y. 127, 129; see, also, Bartolomeo v. Bennett Contr. Co., 245 N. Y. 66.) Each case must, nevertheless, be considered on its own facts.
In the present case we find no evidence to warrant the determination that Collins had temporarily left the employ of Thom McAn to enter the service of McFadden Express Co. When he undertook his assignment to guide the trailer, he did so at the direction of his own superior, and there is no evidence that he became subject to the direction of Cannaughtan. Moreover, the act that he was performing was for the purpose of facilitating a delivery to his employer; to that extent, at least, he was acting for his employer’s benefit (cf. Cannon v. Fargo, 222 N. Y. 321, 326).
We find, accordingly, that the defendant Thom McAn, Inc. is liable to the plaintiff.
IV
THE DAMAGE OF THE PLAINTIFF
The plaintiff, a barber, was 57 at the time of the injury; he now enjoys a life expectancy of 14.74 years, according to the *827 Americari Experience Table of Mortality. As a result of the incident, he was thrown to the ground, sustaining a comminuted fracture of the upper end of the humerus and a bruise on his left knee. For some seven weeks his arm was in a cast. He has undergone 65 physiotherapy treatments.
Two doctors testifying on behalf of the plaintiff stated that the plaintiff had suffered a loss of function in the left shoulder of about 50%. They found crepitation on shoulder motions, and considerable original damage as a consequence of the fracture which had healed but had left a flattening of the contour and a depression in the shoulder blade; some wasting was also evident. They testified that plaintiff has a permanent malformation and disability, which produces pain and interferes with plaintiff’s occupation as a barber.
The plaintiff was hospitalized for four or five days, and went back to part-time work in three months. He resumed full-time work in seven months. He testified that he still experiences pain in his shoulder, and cannot sleep on his left side. He finds difficulty in cutting hair and cannot raise his left hand above his brow.
The plaintiff incurred hospital expenses of $119, X-ray expenses of $35, medical service expenses of $600, and physiotherapy expenses of $650, a total in all of $1,404.
V
CONCLUSION
The court finds that the plaintiff was not guilty of any negligence contributing to the happening of the incident and his injuries. The court finds that the defendants Wolff, McFadden Express Co., Cannaughtan, Jr. and Thom McAn, Inc. were concurrently negligent for the happening of the incident and jointly liable to the plaintiff for his injuries. The court finds that as all of the defendants named were actively negligent, there can be no recovery over on any of the cross complaints pleaded in the defendants’ answers (Putvin v. Buffalo Elec. Co., 5 N Y 2d 447, 455; Opper v. Tripp Lake Estates, 274 App. Div. 422, affd. 300 N. Y. 572).
Accordingly the court dismisses the cross complaints, and directs judgment in favor of the plaintiff against the defendants named above in the sum of $20,000, which the court finds under all the circumstances to be fair and reasonable compensation to the plaintiff.

. Cf. Holmes, The Common Law, pp. 93-96, when he discusses the unreasonable and intolerable burden which would be east on activity, if every voluntary act was at one’s peril.

. The Palsgraf case excited much comment and controversy. Some of the articles discussing it are listed in Prosser, Palsgraf Revisited, 52 Mich. L. Rev. 1, footnote 3.

. The text writers recognize foreseeability, based on knowledge, as indispensable to the finding of negligence. See Prosser, Torts (2d ed.) 120; 2 Harper and James, Torts, § 16.9, pp. 928-936; § 18.2, pp. 1018-1019.

. This case is the subject of an extensive note in 36 N. Y. U. L. Rev. 1043.

. A ease remarkably like the facts in this case is Kirchner v. Muller (280 N. Y. 23). There the plaintiff while walking on a sidewalk, was injured when an end of a plank covering a drain across the sidewalk hit him as the result of being tipped up by a truck in parking. The jury at the trial returned a verdict for the plaintiff against the owner of the premises benefited by the drain, but found no cause of action against the driver of the truck. The opinions on appeal deal with the question of the personal liability of a trustee owning the premises in suit, and not at all with the liability of the driver (because of the jury’s verdict in his favor). There are factual differences also between the conditions in this case and the conditions in Kirchner. For example, it was found that the end of the plank projected over the edge of the curb into the roadway, thus making it not only easy but probable that a car, in parking, would strike it.

. In that case a tug operated by the defendants struck a bridge upon which the plaintiff was working. The defendants were held liable for his injuries caused by falling braces as a result of the collision, the lack of braces in turn allowing the piles of the bridge to catch the plaintiff between them.

. The cases of pedestrians injured by backing vehicles are collected in Anns., 63 A. L. R. 2d 5, 58, 114, 156, 184, 202.

. 'Section 1162 (L. 1957, ck. 698, eff. July 1, 1958) reads as follows: “No person shall move a vehicle which is stopped, standing, or parked unless and until such movement can be made with reasonable safety.”
Subdivision (a) of section 1202 (L. 1958, ch. 853, eff. July 1, 1958) reads as follows: “ No person shall stop, stand, or park a vehicle, except when necessary to avoid conflict with other traffic or in compliance with law or the directions of a police officer or traffic-control device, in any of the following places:
1. On a sidewalk.”
Section 1211 (L. 1957, ch. 698, eE. July 1, 1958) reads as follows: “The driver of a vehicle shall not back the same unless such movement can be made with reasonable safety and without interfering with other traffic.”

. A rationale of the doctrine of visiting liability on one negligently carrying out a voluntary act, without compensation, is stated in Seavey, Reliance upon Gratuitous Promises or Other Conduct, 64 Harv. L. Rev. 913.