WILLIAM L. WEBB, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 31734.)

Court of Claims, August 20, 1954.

*David G. Fellows* and *James J. Barrett* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Edward R. Murphy* of counsel), for defendant.

LAMBIASE, J. Claimant has filed this claim to recover damages for injuries sustained by him on October 2, 1950, while he was an inmate of Attica State Prison, at which time he was working as a member of a prison crew dismantling a frame scaffold which had been used in connection with the repairing of the roof of the prison metal shop building.

The scaffold was of an overall length of about thirty feet. It was about thirty feet high, six feet deep and consisted of three or four sections. On the day in question, claimant was working about midway between the top of the scaffold and the ground — that is, about fifteen or sixteen feet from the ground, and was engaged in removing cross braces. There were two other inmates working on the top section of the scaffold. There was an extension ladder which had been placed against the scaffold and which ladder reached from the ground up to the top thereof. The foot of the ladder was about six to eight feet away from the outer face of the scaffold and at the point where claimant was working, the ladder was about four or five feet away from said outer face. The width of the ladder was about eighteen inches and its rungs were about twelve inches to fourteen inches apart.

The scaffold was moored to the metal shop building by metal wire in a manner not too particularly detailed by the evidence. As the work of dismantling progressed, claimant was knocking off the cross braces and the afore-mentioned wire was cut away. Two other inmates were on the roof of the metal shop building, each holding a rope which was fastened to the top of the scaffold, a procedure designed to hold and to steady the scaffold. The roof of the building was a peaked one, and the men were standing thereon on the farther side thereof away from the scafford, each holding a rope which had been strung out over the peak of the roof. Each of these men, besides holding the rope in his hands, had it half wound around his body for greater anchorage and to better take up any slack, and to keep the rope taut.

There came a time when in the course of the above-mentioned operation, the scaffold began to sway with a motion described as back and forth — that is, away from the building and then back toward the building. As it was thus swaying, claimant heard someone, who he assumed was one Baker, a civilian

employee of the State of New York in charge of the dismantling work, call out to him and to the others, in words and in effect, to get off the scaffold. We are satisfied that it was, in fact, Baker who thus called out and that he did call out to the men to get off the scaffold. Thereupon the two inmates working on the top section of the scaffold jumped on to the roof of the building and claimant jumped from the platform of the scaffold toward the afore-mentioned ladder, grasped the rungs on their underside, and while in that position in relation to the ladder, began to descend to the ground. As he was thus descending and when he was about one to two feet from the ground, claimant either lost his grip on the rungs or intentionally let go of them — we are unable to determine which — and dropped to the ground with his body in an upright position. In so doing, his body struck an iron pinch or crowbar that was sticking out of the ground at a point directly underneath the ladder. This iron crowbar was about fifty inches in length, was one and one-quarter inches in diameter and its top was flattened. It entered his rectum, penetrated the lower bowel for several inches, and inflicted upon claimant serious, painful and permanent injuries. It does not appear that the scaffold broke up or collapsed or that anything else happened to it at the time.

It is alleged by claimant, "That the state, its officers, employees and agents were negligent in the erection, maintenance and operation of said scaffold and in demolishing the same in that they failed to provide claimant with a safe place in which to work and to provide safe appliances therefor, in failing to erect, maintain, operate and demolish said scaffold and its appliances in such manner as to give proper protection to claimant, in using unsafe, weak and a defective scaffold and in failing to properly secure it and without giving claimant proper warning thereof, in failing to provide a railing on said scaffold at the place where claimant was working, in negligently doing the work of demolishing said scaffold and without giving proper warning to claimant of such conditions, in permitting said iron bar to be in close proximity to said scaffold and said ladder thereby creating a dangerous condition and without proper warning to claimant, in failing to properly inspect said scaffold, said ladder, said bar and the premises where said accident occurred and in failing to warn and properly protect claimant in said work of demolition. The state, its officer, agents and employees were negligent in improperly and defectively conducting said work of demolishing said scaffold thereby causing said scaffold to sway and shift and com-

pelling claimant to leap therefrom and land on said iron pinch bar.''

It has not been established either that the scaffold was not erected in accordance with standard and approved construction practices or that it was not being dismantled in accordance with accepted and approved procedures. We do not think that the evidence of swaying of the scaffold, alone and of itself, may be made the basis of an inference of negligence. (*Pursley* v. *Edge Moor Bridge Works*, 56 App. Div. 71, affd. 168 N. Y. 589.) We are, therefore, unable to discover any basis for a finding that the State of New York, its officers and employees, were either negligent in the manner in which the scaffold was erected or in the manner in which it was being dismantled. Under such circumstances, we cannot say that there is any basis for a finding that claimant was not afforded a safe place in which to work.

The record indicates that prior to the date of the accident it had been the practice of the prison inmates on this particular job and on other similar jobs at the prison to throw pinch or crowbars from scaffolds and from roofs to the ground after they were through using them; that ofttimes when thus thrown, the crowbars were caused to be driven part way into the ground with the remainder of their length sticking up out of the ground in an upright position. We are unable to say that such practice alone and in and of itself constituted negligence; nor did the happening of this unfortunate accident make it so, for, in our opinion, it could not have been reasonably foreseen by the State of New York, its officers and employees, that a person would be coming down the underside of a ladder and either lose his grip or let go of the rungs thereof so as to cause him to fall and to impale himself on one of such bars in the manner in which claimant did. (*Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y. 339.) There was no proof of the happening of a similar accident prior to the happening of the accident to claimant.

Without determining, and assuming *arguendo*, and for that purpose only, that to a reasonably prudent person, the circumstances, at and immediately prior to the time of the accident, presented and created without negligence on his part an emergency, we are, nevertheless, of the opinion that more than what has been established by the record must be made to appear to furnish the basis for a finding of negligence on the part of the State of New York proximately causing the accident with its resultant injuries to claimant. If we are correct in our con-

clusion — and we think that we are — that no negligence on the part of the State of New York, its officers and employees, in the construction and/or in the dismantling of the scaffold has. been established, it may perhaps be argued that Baker created an emergency by shouting as he did to the men to get off the scaffold. Baker was not called by the State. There is no evidence, however, that Baker was a man other than one possessed of general intelligence, judgment, clarity of physical vision, alert mental perception, and of those attributes with which the ordinary person is endowed. He did, we believe, what the reasonably prudent man would have done under the circumstances — he warned claimant and the others. The best that we are able to grant to claimant upon the record, the most favorable interpretation that can be given to his proof, and the most that can be charged against the State of New York through the action of Baker in his shouted warning to claimant and to the others, is that Baker may have been guilty of an error in judgment under the circumstances. Again assuming *arguendo,* and for that purpose only, that the shouted warning created an emergency, we do not think that upon this record, there was any fault on the part of the State of New York in connection therewith, and that " The defendant was not obliged to exercise the best judgment, and would not be liable for a wrong choice of action if called upon to act quickly in the face of peril." (*Ward* v. *F. R. A. Operating Corp.,* 265 N. Y. 303, 308.) " In the light of the wisdom that follows the event, we can see that the outcome might have been better if they had done something else. That is not enough (*Rider* v. *Syracuse R. T. Ry. Co.,* 171 N. Y. 139, 152)." (*Woloszynowski* v. *New York Central R. R. Co.,* 254 N. Y. 206, 209.)

In the light of our discussion, we conclude that the claimant has failed to establish any negligence on the part of the State of New York for which it can be held liable for damages herein. The claim of the claimant must be and hereby is dismissed on the merits.

The foregoing constitutes the written and signed decision upon which judgment may be entered. (Civ. Prac. Act, § 440.)

Let judgment be entered accordingly.