EMIL SCHWEITZER, Appellant, *v.* FORBES FIREPROOFING CORP., Respondent.

First Department, April 10, 1958.

420

*Benjamin H. Siff* of counsel (*Waxman & Scacco,* attorneys), for appellant.

*William P. Cotter* of counsel (*Cotter, Carey & Schultz,* attorneys), for respondent.

VALENTE, J. Plaintiff appeals from a judgment dismissing his complaint in a personal injury action. At the end of the entire case in a trial before a jury, the Trial Justice dismissed the complaint for failure of proof.

Plaintiff, an employee of the Ruppert Brewery Company, was working on the night shift in the washhouse of the brewery. At about 9:00 P.M. on January 3, 1952, while moving a skid used to receive empty barrels into the washroom, he claimed to

have tripped over some reinforcing rods that projected up to four inches from a section of a new cement floor. Defendant was a subcontractor who had undertaken to do the reinforced concrete work in connection with the installation of a new floor in the washhouse. The washhouse (so-called because that was where beer barrels were washed) was a rectangular room, approximately 200 feet by 70 feet in dimensions, equipped with four washing machines.

In order to permit the washhouse to be in continuous use during the course of the installation of the new floor, the reconstruction work was done piecemeal, in four sections. After a section of the old floor would be dug up and excavated to a depth of approximately 14 inches, and that part was smoothed out, defendant would install the steel reinforcing rods and pour from eight to nine inches of concrete. The ends of the rods would protrude about four inches beyond the edge of the section so as to provide a tie-in with the next quarter section to be done.

On the date of the accident, at about 3:30 P.M., defendant had completed pouring of concrete in an area the westerly end of which ran some 50 feet from the south toward the north wall of the washroom. Steel rods protruded from this westerly edge about four inches for the entire 50 feet of the worked area. At 9:00 P.M., plaintiff was assigned to unload empty barrels at the No. 4 hole. For this operation, two skids — an outside and inside one — were used. The inside skid, fabricated of iron, was eight to nine feet long, rested on two or three horses, and stood about one and one-half feet high.

According to plaintiff's testimony, the inside skid was practically adjacent to the unfinished border of the new concrete section of the floor; and on the night of the accident this skid was crooked and required straightening. Plaintiff, at the direction of his foreman, proceeded to straighten out the skid, and in order to accomplish that operation he had to step over to the new floor, grasp the horse between two of its legs and push it over. Plaintiff testified that as he did this, "my right foot got hooked in a reconstruction wire and I went over, fell over and fell right on my foot from my weight on account of the — the tip got caught and I broke my ankle and hurted my little finger."*

---

* There is also testimony by the plaintiff that he may have told someone at the hospital that he fell on a slippery floor. Responding to his own attorney's questioning, plaintiff admitted he had prepared a statement in his own handwriting on January 31, 1952 wherein he stated: "They are fixing a new floor while I stepped from the floor on the new floor. I slipped and fell."

Plaintiff's foreman fixed the position of the inside skid as two feet from the border of the new concrete. He testified the skid was movable, and that if it became crooked, plaintiff would be obliged to straighten it — an operation which would necessitate plaintiff's stepping onto the new concrete.

The gravamen of plaintiff's complaint is that defendant failed to provide barricades around the work it had done. (Certainly no negligence in the performance of defendant's work was alleged or established.) But on the testimony discussed hereinabove, and assuming the absence of barricades (although the testimony was in conflict on that point), it is evident that the lack of barricades was not the proximate cause of the accident. Obviously, had suitable barricades been provided, plaintiff nevertheless would have been compelled to remove them in order to get onto the concrete to accomplish an adjustment of the skids. Hence, there was no causal relation between the alleged negligent act and the ensuing injury.

Moreover, the testimony of the plaintiff that he never, at any time, saw the protruding steel rods is incredible as a matter of law. Plaintiff admitted he had been working in the washroom for one week while the installation of the new floor was in progress, including the day preceding as well as the afternoon of the date of the accident. After some prodding, he testified that he had seen the steel rods being placed, the concrete poured over them and the protruding four-inch portions of the rods; but he claimed not to have noticed them on the afternoon of the accident.

But plaintiff did admit that on that afternoon he had walked across the washroom a couple of times to get a beer at the bar located off the east wall. His testimony that neither on those occasions nor when he stepped over the newly concreted area to adjust the skid, did he see the protruding rods, taxes all credulity.

To hold a defendant for negligence there must be a duty to the injured party the observance of which could have averted the injury (*Palsgraf* v. *Long Is. R. R. Co.*, 248 N. Y. 339, 342). The duty which plaintiff relies upon herein is the claimed obligation of the defendant to maintain barricades around the section of the newly laid concrete. In addition to the insufficiency of the evidence as to proximate cause discussed hereinabove, a majority of this court would sustain the dismissal of the complaint upon the further ground that there was no duty on the part of defendant, who was a subcontractor, to maintain barricades at the time the accident occurred. The

contract between the general contractor and defendant did not obligate defendant to furnish barricades. It was the obligation of the general contractor to do so. In the absence of an agreement to assume the burden thereof, a subcontractor, situated as the defendant herein, is under no duty to provide barricades (*Hooey* v. *Airport Constr. Co.*, 253 N. Y. 486). However, even if reasonable precaution would have dictated the use of barricades at 3:30 P.M. when the subcontractor finished its work for the day, that obligation did not extend to barricading the area at 9:00 P.M. when supervision, if any, was exclusively in the hands of the general contractor. Hence, the absence of barricades at 9:00 P.M. was not a breach of any duty owed by defendant, and the negligence charged herein cannot as a matter of law be attributed to defendant.

For the reasons indicated, we are of the opinion that the complaint was properly dismissed. Judgment should be affirmed, with costs to the respondent.

BOTEIN, P. J. (concurring). I agree that the failure to provide barricades was not the proximate cause of the accident, and since this omission was the only negligence sought to be attributed to defendant, the complaint was properly dismissed. However, I cannot agree that defendant was under no duty to provide barricades, if, as could be inferred by the jury on the evidence in this case, defendant had reasonable ground to believe that the general contractor would not supply the requisite barricades (*Hooey* v. *Airport Constr. Co.*, 253 N. Y. 486, 490; *Ryan* v. *Feeney & Sheehan Bldg Co.*, 239 N. Y. 43; *Hardie* v. *Boland Co.*, 205 N. Y. 336).

BREITEL and McNALLY, JJ., concur with VALENTE, J.; BOTEIN, P. J., concurs in opinion, in which FRANK, J., concurs.

Judgment unanimously affirmed, with costs to the respondent.