Alexander Del Giorno, J.
This is an action to recover damages for the wrongful death of Nicholas Scochemaro, an infant of the age of 16 years, resulting from an alleged shooting by one Theodore Glenn, aged 14 years, on November 26, 1954, in front of premises 1503 Charlotte Place, Brooklyn, New York.
At the trial, a stipulation was entered into between the *544 attorneys for the respective parties by the terms of which it was conceded that the deceased died as a result of a wound inflicted by the shooting. The circumstances of the shooting and the type of weapon employed, however, were not conceded, except that the wound was caused by a .22 calibre bullet.
The cost of the funeral and burial expenses was evidenced by a funeral bill dated November 27, 1954 in the sum of $395, and a receipt for a monument in the sum of $120, of which $60 has been paid, and testimony that $60 was paid for a grave and the sum of $12 for cement around the grave. The total amount of the funeral expenses, therefore was the sum of $587.
Theodore Glenn was admitted to the Warwick Training School for Boys on June 25, 1954, when he was 14 years of age. Prior to this he had been committed to the Wiltwyck School for Boys on November 9, 1951 and had been paroled therefrom on September 10, 1953.
On October 29, 1954, he was issued a three-day pass from the school and he failed to return to the school on November 1, 1954. The superintendent of the school learned of the fact that Glenn had overstayed his pass on November 4, and caused a warrant to be issued for his apprehension on November 5. The pass had been issued to Glenn because of the fact that his behavior had been good and that he was to visit one Mrs. Katie Johnson, a prospective foster parent. On November 26, 1954, Nicholas Scochemaro was killed, and on December 2, 1954, Glenn was apprehended, being returned to the school on the following day.
The initial case study of Glenn, made at the Warwick School, indicated that he was a quiet, repressed boy who had been living with an aunt since the death of his mother; that he was unhappy in the aunt’s home because of the restrictions and criticism imposed upon him; that he was unable to read; that during his two-year stay at Wiltwyck he had run away several times; that he had been stealing for a long period of time; that he believed his father had no interest in him and that he would consider foster home placement.
In accordance with State policy, Glenn was examined at the school within one week of his admission by the child psychia trist, Dr. Irving J. Knapp, in order that the state of his mental health might be determined. He was found to be a normal boy, with personality disorders which were caused by extraneous influences, such as home and neighborhood. Thorough examination was made of Glenn so that he could be committed to a mental hospital in the event that he were found to be mentally ill. He was found sane.
*545 The father of the deceased testified that his son had lived with him since his birth and that the boy was of great help to him. The father did not know Glenn and did not know how his son came to die.
Warwick Training School for Boys is maintained by the State for the training and care of children who are legally committed thereto and for their guidance and supervision on release. It is neither a penal nor a mental institution, but its purpose is purely corrective. Its function principally is to find for boys a home with the environment necessary for their well-being.
The State was not negligent in the supervision and care of Glenn. The pass issued to him was earned by him for good conduct and the purpose of his being allowed out of the school was for him to visit a prospective foster parent.
Further, there is no proof that the absence of Glenn from the school was causally connected with or was the proximate cause of the death of the decedent.
In the operation and management of its schools, the State is responsible only for hazards reasonably to be foreseen, only for risks reasonably to be perceived. (Flaherty v. State of New York, 296 N. Y. 342; Excelsior Ins. Co. of N. Y. v. State of New York, 296 N. Y. 40; Calabria v. State of New York, 289 N. Y. 613; Martindale v. State of New York, 269 N. Y. 554; Palsgraf v. Long Is. R. R. Co., 248 N. Y. 339, 344.)
In the light of all of the circumstances, the State could not reasonably have foreseen the perpetration by Glenn of the vicious act involved.
So far as third persons, such as the claimant herein, are involved, the State in its relation to Glenn stands in loco parentis. The State owes the community no greater duty than would parents in similar circumstances and, in the absence of necessity therefor, need not keep such inmate under constant guard. (Excelsior Ins. Co. of N. Y. v. State of New York, supra.)
The claim is dismissed.
This memorandum constitutes the decision of the court in accordance with the provision of section 440 of the Civil Practice Act.
Let judgment be entered accordingly.