Alexander Del Giorno, J.
This claim is to recover damages for personal injuries sustained by claimant as a result of the alleged negligence of the State of New York and the Jones Beach State Parkway Authority.
In the latter part of June, 1957, claimant applied to the Long Island State Park Commission, hereinafter referred to as “ Commission ”, at its headquarters in Belmont Lake State Park, for a Summer job. He then and there filed an application for a job. Several days later, on or about June 26 or 27, he went back to the office of the Commission, where he spoke to a young lady at a desk in the office. As a result of this visit, he reported to work as a laborer for the Commission at the warehouse area at Jones Beach, in early July. The person to whom he reported for work was Mr. Thein, foreman for the Jones Beach State *812 Parkway Authority, hereinafter referred to as the ‘ ‘ Authority ’ ’. Each day thereafter he reported to Mr. Thein, who assigned him to work to he performed.
On July 19, 1957, he reported for work at 5:00 a.m., to Mr. Thein, at the High Hills section of Jones Beach. He, one Bimby and one Hannis were assigned to pick up rubbish. Mr. Thein drove the three from High Hills to the warehouse area, a distance of about a mile, in his car. At the warehouse was a truck, which was a Dodge Power Wagon. On the truck was a cab, where people could sit, and the back of the truck was a flat, open deck. Bimby sat behind the wheel and Hannis got into the cab with him. Claimant, who meanwhile had been standing on the ground, started to get onto the back of the truck. He noticed that it was completely covered with “morning” water, and that there was grease on the metal deck. He told Mr. Thein that the back was very slick and that it might be dangerous. Mr. Thein told him to get on the running board. Claimant told him that was wet and dangerous, too. Mr. Thein told him to get on and get to work. Accordingly, he got on the running board, putting his arm through the window and holding onto the top of the cab through the window to prevent his falling off. The truck then proceeded toward Short Beach, a distance of three or four miles from the warehouse. When a point had been reached about one mile from the starting place, ‘ ‘ the axle broke ” and he was thrown off the truck.
He awoke in Meadowbrook Hospital, where he remained until July 26. For the remainder of that month and during the month of August he did not work. For a six-week period, he was paid by the Workmen’s Compensation Board, which paid for his hospital bill and the bill of Dr. William Kintzing. The board also paid the bill of Dr. Dwyer for two visits, and claimant himself paid Dr. Dwyer for two additional visits.
Claimant returned to his regular employment as a teacher for Central High School, District No. 2, in Floral Park, New York, the week after Labor Day.
On cross-examination, claimant testified that when he first applied to the Commission for the job, he was told that he would be loaned to the Authority to work, although his wages would be paid by the Commission. During the period of slightly less than three weeks that he worked, he had ridden on the running board, in the back of and inside the power vehicles that were used for transportation. On occasion, he had seen three people riding in the cab. He testified further that, because of the size of Bimby and Hannis, there was no room for him in the cab on *813 the day of the accident, because if he had entered the cab the driver would have been unable to shift gears.
The classification of claimant in his work was that of laborer, working a regular eight hours per day.
The determination of the Workmen’s Compensation Board established accident, notice and causal relation, the Commission being designated as the employer.
Dr. Kintzing, on behalf of claimant, testified that he attended claimant at the hospital and that claimant had sustained trauma to the back of his head, fractured his skull in the back and sustained a three-inch laceration of the scalp. The fracture went through the occipital bone and into the temporal bone of the left ear. He stated that the sequelae of the injury is affecting claimant at present with respect to damage to the eighth cranial nerve, which is the hearing nerve. Headaches and dizziness would be caused by the injuries. On examining claimant after his discharge from the hospital, the doctor found that there was a contusion and abrasion of the occiput and that the left eardrum was dark and discolored. Further examination caused him to conclude that claimant was suffering from basilar skull fracture with damage to the eighth nerve and to the vestibular apparatus. The doctor stated that in cases of this type, the percentage of deafness is about 20%. As healing occurs, most of hearing is regained, unless the nerve is cut, which did not happen here. Claimant has regained some of the 20% loss of hearing. The witness has not examined claimant since August 14,1957. When asked to what extent the injuries would incapacitate claimant, the witness stated that he did not feel well qualified to state the audiometric problem as well as could an otologist. He had referred claimant to Dr. Cornelius Dwyer for audiometric reading and disposition regarding deafness, but did not have Dr. Dwyer’s report. Dr. Dwyer did not testify at the trial.
Claimant admitted that on an application for an operator’s renewal license in September, 1957, he had answered in the negative a question as to whether he had defective hearing, and stated that his reason for so doing was that he thought the question referred to deafness or the need for a hearing aid. In February, 1958, he applied for a position with the Long Island State Parkway Police and in June, 1958, he filed an application for the position of traffic and park officer. On both of the applications for the latter positions, in response to a question as to whether he had any physical defects, disease or disability, he answered in the negative.
*814 At the close of claimant’s case, defendants moved for a dismissal of the claim upon the following grounds: (1) that claimant failed to show negligence and to prove his own freedom from contributory negligence; (2) that workmen’s compensation is the sole and exclusive remedy of claimant, since claimant, while a general employee of the Commission, was a special employee of the Authority at the time of the accident and is bound by his choice of having accepted workmen’s compensation from his general employer. Defendants then rested and renewed the motions made at the end of claimant’s case.
When claimant applied to the Commission for work as a laborer, he was told that he would be loaned to the Authority for work as such. The rendition of services by claimant to the Authority was required of and assumed by claimant pursuant to statutory provision. Section 153 of the Public Authorities Law referring to the powers of the Jones Beach State Parkway Authority, provides, under subdivision 5 thereof, that the Authority shall have the power “ With the consent of the commission to use the agents, employees and facilities of the commission ’ ’.
An employee may have both a general and special employer. In Matter of De Noyer v. Cavanaugh (221 N. Y. 273, 275-276) the court held that: “The fact that a workman has a general and a special employer is not inconsistent with the relation of employer and employee between both of them and himself. If the men are under the exclusive control of the special employer in the performance of work which is a part of his business, they are, for the time being, his employees. (Comerford's Case, 224 Mass. 571, 573.) Thus at one and the same time they are generally the employees of the general employer and specially the employees of the special employer. As they may under the common law of master and servant look to the former for their wages and to the latter for damages for negligent injuries, so under the Workmen’s Compensation Law they may, so far as its provisions are applicable, look to one or to the other or to both for compensation for injuries due to occupational hazards (Workmen’s Compensation Law [Consol. Laws, chap. 67], § 3, subds. 3, 4), and the industrial commission may make such an award as the facts in the particular case may justify. ’ ’ Claimant elected to proceed against the Commission under the Workmen’s Compensation Law. He may not now bring an action at law against the Authority. (Mitchell v. Adam Hat Stores, 279 App. Div. 877, motion for reargument denied 279 App. Div. 931, affd. 304 N. Y. 836.) In the Mitchell case, plaintiff brought an action *815 to recover damages sustained as a result of the alleged negligence of defendant. Plaintiff had elected previously to obtain her remedy against the general employer under the Workmen’s Compensation Law and had secured an award thereunder. The court found that defendant was the special employer of plaintiff at the time of the accident and was an employer within the contemplation of the Workmen’s Compensation Law. In affirming a judgment dismissing the complaint, the Court of Appeals held (p. 837): “ There was evidence that plaintiff wife, a comtometer operator, had been sent by her employer to defendant-respondent’s place of business to perform comptometer work; that while so engaged, she had suffered the injuries complained of on respondent’s premises; that thereafter said individual employer had filed a notice of commencement of payment of workmen’s compensation with the Department of Labor, and that plaintiff wife subsequently filed a claim for compensation in which said individual employer was named as her employer. After having received approximately thirteen weeks of workmen’s compensation, plaintiff wife filed a notice of commencement of a third-party action against defendant-respondent. At hearings held by the Workmen’s Compensation Board to determine whether plaintiff wife was entitled to compensation beyond the tentative award which had granted her benefits for thirteen weeks, there was evidence that while her salary had been paid and her hours of employment fixed by the individual employer, an employee of defendant-respondent gave her all the orders as to what work she was to do and also controlled and supervised such work. The Appellate Division, in dismissing the complaint, stated that defendant-respondent ‘ was the special employer of the plaintiff wife at the time of the accident and was an employer within the contemplation of the Workmen’s Compensation Law. * * * The remedy afforded under the Workmen’s Compensation Law was exclusive in that plaintiff wife had exercised her election and had procured an award thereunder. (Workmen’s Compensation Law, § 11.) ’ ”
Belying upon Bird v. New York State Thruway Auth. (8 A D 2d 495) claimant contends that he was actually in the employ of the Commission, was merely loaned to the Authority and never became the employee of the Authority. He concludes that he theretofore was not relegated to workmen’s compensation for his remedy. The Bird case, however, is distinguishable from the case at bar. Bird was a senior engineer geologist in the Bureau of Soil Mechanics, Department of Public Works, and was in the competitive class of civil service. At the request *816 of the Thruway Authority, the Department of Public Works directed Bird to give limited aid to Public Works by way of “ a few conferences and one or two field trips ” on a well program. While traveling in a Thruway vehicle operated by a Thruway employee, he was injured. Bird made no claim for a compensation award. The Court of Claims had found that the accident was caused by the negligence of the driver and the Appellate Division held that this finding was supported by the evidence. The Court of Claims held that claimant’s sole remedy was workmen’s compensation because at the time of the accident claimant was in the general employ of the Department of Public Works and the special employee of the Thruway. In reversing this judgment and granting a new trial, the Appellate Division held that the Department of Public Works may be regarded as an independent contractor, occupying a position similar to that of a private laboratory or a firm of scientific consultants rendering a technical service, and that the employees of an independent contractor do not become special employees of the firm for which services are furnished. At page 501, the court stated: ‘ ‘ There is a further distinction between the present case and the cases following De Noyer v. Cavanaugh (221 N. Y. 273, supra). The latter cases involve drivers and laborers while the instant case involves a professional engineer of high rank in civil service. Bird was not a laborer, but was a senior engineering geologist, a position requiring the exercise of independent judgment. He was answerable only to his superiors in the Department of Public Works and was not under the direction or control of the Thruway.” The court is of the opinion that the case of De Noyer v. Cavanaugh is controlling herein.
There is one further point which the court considers it a duty to examine. Claimant offered no evidence to show what caused the axle to break, or whether the defendants knew of the condition of the axle or were aware that any unreasonable risk was involved. In his brief, however, claimant states that he never claimed any negligence in connection with the operation of the truck, but rather that he predicated his claim upon the fact that he was ordered by his superior to ride upon the running board of the truck and thereby was not provided with safe transportation.
The act of the wrongdoer to constitute negligence must be the proximate cause of the accident. There is no proof that the running board was defective or that the direction of the foreman for claimant to ride thereon was the cause of the *817 accident. The proximate cause of the accident was the breaking of the axle. A proximate causal connection between the wrongful act and the accident must exist for liability to be imposed. Even if the direction to ride on the running board was negligence, claimant has not established his case, for if he proves negligence by defendant and injury to himself, but fails to prove that the negligence was the legal, or proximate cause of the injury, he cannot recover. (Williams v. State of New York, 308 N. Y. 548.) It is stated in Warren’s, New Law of Negligence (Yol. 1, p. 43): “ If, however, the result is one that could not have been reasonably anticipated from the original negligent act, then it cannot be said that the act was the proximate cause of the injury. In such a case it may be the intervening happening that will be the proximate cause and not the original negligent act. And this seems to be the rule even though the injury sustained would not have been sustained had not the original negligent act been committed. ’ ’
There is no requirement to guard against risk not reasonably foreseeable or to guard against that which to the reasonably prudent person is unlikely to occur. ‘ ‘ The risk reasonably to be perceived defines the duty to be obeyed ” (Palsgraf v. Long Is. R. R. Co., 248 N. Y. 339, 344).
Furthermore, claimant testified that he told the foreman that the running board was wet and dangerous, but that the latter told him to get on and get to work. If claimant knew such was the condition and felt that such condition presented a danger to him, but got on nevertheless, he was contributorily negligent, even if he got on at the direction of the foreman.
Accordingly, even assuming that this case should be decided on the basis of negligence alone, the court finds that there has been no proof of the negligence of the defendants, and that claimant was guilty of contributory negligence.
The motions of defendants on which decision was reserved are hereby granted.
The claim is dismissed.
This constitutes the decision of the court in accordance with the provisions of section 440 of the Civil Practice Act.
Let judgment be entered accordingly.