■ DONALD C. PARVI, Appellant, v CITY OF KINGSTON, Respondent, et al.,

Defendant.—Appeal from a judgment of the Supreme Court, entered March 21, 1975 in Ulster County, upon a dismissal of the complaint by the court at a Trial Term at the close of the plaintiff's case. On the night of May 28, 1972, two police officers of the City of Kingston responded to a call which advised them that a group of men were causing a disturbance. When they arrived, they found several men, including the plaintiff, arguing among themselves and the men were apparently given the choice to either move along or be arrested. When the men protested that they had nowhere to go, the officers drove Dixie Dugan and the plaintiff to a place outside the city limits known as Coleman Hill where there were lean-tos and shelters. At some time thereafter the plaintiff and Dugan wandered some distance from the area, climbed over a guardrail and walked onto the New York State Thruway. Both men were struck by a vehicle driven by David Darling and, as a result, Dixie Dugan was killed and the plaintiff suffered serious injuries primarily to his lower extremities. Plaintiff thereafter commenced an action against the City of Kingston, alleging negligence on the part of its police officers in that they left him in an area in the proximity of the Thruway when he was in a state of intoxication. Another cause of action by plaintiff against the city alleged false imprisonment. In addition, the plaintiff instituted an action against David Darling, alleging that Darling so negligently and recklessly operated his motor vehicle that the same struck the plaintiff, causing the injuries that he received. At the conclusion of the plaintiff's case, the court dismissed the complaint against both defendants, holding that negligence on the part of Darling had not been established and that there had been no negligence on the part of the police officers, since the occurrence had been outside the realm of reasonable foreseeability, and the court held that the false imprisonment claim was not substantiated. Plaintiff did not appeal the dismissal of his action against Darling, but here appeals the dismissal of his causes of action against the City of Kingston. When a motion to dismiss is made at the close of the plaintiff's case, the plaintiff is entitled to the most favorable inferences to be drawn from the proof (*Brisette v New York City Tr. Auth.,* 45 AD2d 960, mod 46 AD2d 686; cf. *Schmoll v Luther,* 36 AD2d 996). Upon such a motion being made, the test to be applied is not whether plaintiff's verdict would have to be set aside as contrary to the weight of credible evidence, but whether the trial court could hold that there was no rational process by which the jury could have found for the plaintiff (4 Weinstein-Korn-Miller, NY Civ Prac, par 4401.05; see *Marotta v Montgomery Ward & Co.,* 24 AD2d 914). Concerning the personal injury action, the elements required in order that an action for negligence may be maintained are that the defendant owed a duty to the plaintiff, that the defendant was guilty of some act or omission in violation of that duty, that damage to plaintiff was proximately caused by such violation, and that there was an absence of contributory negligence on plaintiff's own part (*Kimbar v Estis,* 1 NY2d 399, 403). "The risk reasonably to be perceived defines the duty to be obeyed * * * it is risk to another or to others within the range of apprehension" (*Palsgraf v Long Is. R.R. Co.,* 248 NY 339, 344). The trial court held that the risk that two grown men, albeit obviously under the influence of alcohol to some degree, would walk over 350 feet in the dead of night, climb over a guardrail and walk out into the New York State Thruway was not reasonably foreseeable. Furthermore, assuming but not conceding that the Coleman Hill area was not a reasonably safe place to discharge the plaintiff and his companion, by reason of its proximity (over 300 feet) to the Thruway, it seems clear that the accident was proximately caused either by the voluntary intoxication of the plaintiff

or by his own negligence and that the cause of the accident, as urged by the plaintiff, is remote and thereby not a responsible cause. As was stated in *Jezerski v White* (29 Misc 2d 342, 345–346): "When a remote cause does nothing more than to furnish the condition or give rise to the occasion by which an injury is possible and the injury is brought about by the intervention of a new, independent and sufficient cause, the author of the original cause is not responsible. In this circumstance the first * * * event is a *causa sine qua non* but not a *causa causans* of the ultimate injury. When injury is precipitated by the intervention of an independent cause, which defendant was not bound to anticipate and without which the injury would not have happened, no liability rests upon a defendant, even though his conduct may in the first instance have been negligent *(Leeds v New York Tel. Co.,* 178 N. Y. 118, 121–122)." The trial court's holding was eminently correct. The Court of Appeals has very recently stated the necessary elements which a plaintiff must prove in order to prevail in a cause of action for false imprisonment: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged" *(Broughton v State of New York,* 37 NY2d 451, 456). Analysis of the record to determine the presence or absence of these elements is required. The testimony of the two policemen discloses that Officers Gantner and Wallace of the City of Kingston Police Department, in response to a complaint, proceeded to the Rapp property on Broadway, where, at the rear of the premises, they found the plaintiff, Dixie Dugan and Dugan's brother. The threesome had been drinking and were arguing, talking loudly and using profane language. The officers interrupted the argument to advise that a complaint had been made and that they would have to move on, and, at this point, Raymond Dugan fled with Dixie in pursuit. The latter returned alone after a minute or two and continued his loud and profane talk. When advised that they must move along or be arrested, the two men protested that they had no place to go, whereupon Officer Gantner asked if he could take them someplace, and the two conferred while the officers entered their car. Parvi and Dugan soon entered the car and Gantner drove to the Coleman Hill area on the outskirts of the city. The officers pointed out a grove of trees where there were shelters and lean-tos and advised that they could stay there and evoke no complaints and cause no disturbance. Apparently satisfied with the area, the men left the police car and the officers drove away. The only testimony contrary to this account of the episode is that of the plaintiff who, by his own testimony, had been drinking for three days prior to this incident on May 28, 1972. While the plaintiff's memory of the events of that day appeared uncertain at the examination before trial, it became almost blank during cross-examination at the trial itself. Plaintiff did not know whether it was daylight or dark when he first encountered the police or at the time of the accident on the Thruway. He did not know where he was when he first saw the police nor did he know where they let him out nor could he recall conversations with them. He was very certain, however, that he had been ordered into and then out of the police car. The mystery as to whether the plaintiff was unaware of what was actually going on or whether he was careless with the truth or had a convenient memory or was just confused was solved during the latter stage of his cross-examination. To the question: "So that the circumstances surrounding which you got into the car you only know what has been suggested to you by conversations since?", plaintiff answered in the affirmative, and later on, when being questioned about his departure from the car, he answered: "I know they left

us off, that's all I know." "That's all, actually, I don't know what happened." These answers stood unchallenged and unexplained in the record and constitute a tardy admission that the plaintiff had, in fact, no recollection of the events in question. Since the plaintiff was the only witness to offer testimony in support of his cause, the necessary elements of a cause of action for false imprisonment have not been established and clearly there was no rational process by which the trier of the facts could have found this plaintiff entitled to a verdict. The trial court properly dismissed the complaint. Judgment affirmed, without costs. Koreman, Main and Reynolds, JJ., concur; Herlihy, P. J. and Greenblott, J., dissent and vote to reverse in the following memorandum: In the consideration of a motion for a directed verdict for the defendant, the trial court is required to weigh the facts adduced at the trial in a light most favorable to the plaintiff and afford to the latter the benefits of any favorable inference which can reasonably be drawn therefrom *(Wessel v Krop,* 30 AD2d 764). In our view, the dismissal by the trial court does not withstand application of this rule. The court concluded that the plaintiff was left at a "place of safety". With this conclusion, we cannot agree. Certain facts are undisputed: that plaintiff was so intoxicated that the police felt constrained to take action; that, while in such a state, plaintiff was taken from the City of Kingston to an isolated location close to the New York State Thruway where he was left; that the police made no effort to ascertain where the plaintiff would go and whether he was oriented as to his whereabouts; and that, after a walk of only a few hundred feet from the point at which plaintiff was left off, only a guardrail separated the plaintiff from the Thruway. Under these circumstances, a jury could properly find that this conduct on the part of the defendant placed the plaintiff in a place of danger. The majority concludes that the evidence clearly reveals that the accident was proximately caused either by the voluntary intoxication of the plaintiff or by his own negligence, and that the actions by the police officers were a remote cause. It is illogical, in our view, to conclude that plaintiff's intoxication was a proximate cause of his injuries and at the same time reject as a remote cause the police officers' intervening acts. We do not agree with this analysis of the evidence. It is our opinion that a duty was created by the conduct of the police officers when they took the plaintiff and his companion into their vehicle. They became obligated to either arrest the men and transport them to the jail where they would be safe, or take them to a place where they would not be exposed to danger. Once having assumed the duty of caring for the men, the officers were required to use due care for their safety. It cannot be said to have been unforeseeable as a matter of law that plaintiff and his companion would enter onto the Thruway unable to care for themselves, and in any event it is not necessary that a party charged with negligence should have been able to foresee the injury in the precise form in which it in fact resulted. Furthermore, in our view, a jury question was presented by the cross-examination of the plaintiff to which the majority refers. The jury could well have interpreted that testimony to mean that the plaintiff was so intoxicated that he could not recall the circumstances surrounding the events leading to both his presence in the police car and his departure from the car. There is no dispute that the plaintiff was placed in the police car and taken out of town by the police officers and dropped off in the Coleman Hill area. It was for the triers of the facts to evaluate these facts in view of the pertinent law of negligence. The dismissal of the false imprisonment action requires a detailed analysis of the record. The trial court made no such analysis but simply granted the motion, noting that there was no proof of a false arrest.

In the recent case of *Broughton v State of New York* (37 NY2d 451, 456) the court noted that the cause of "action for false imprisonment is derived from the ancient common-law action of trespass and protects the personal interest of freedom from restraint of movement." The court went on to state (p 458): "Whenever there has been an arrest and imprisonment without a warrant, the officer has acted extrajudicially and the presumption arises that such an arrest and imprisonment are unlawful". "To establish this cause of action the plaintiff must show that: (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged" *(Broughton v State of New York, supra,* p 456). The defendant in its answer to the complaint did not raise any issue of justification for an arrest of the plaintiff and, accordingly, that matter of defense was not before the trial court although it did at one point state that the officers had a right to arrest because an offense was being committed in their presence. *(Broughton v State of New York, supra,* p 458; *Woodson v New York City Housing Auth.,* 10 NY2d 30, 33.) The trial court in its remarks while considering the motion to dismiss stated that the plaintiff had been taken into custody. The plaintiff testified that he had been ordered into the police car and that he was also ordered out of the car after being on what felt like a dirt road in a wooded area. Upon cross-examination it was established that he had also testified that he had been ordered to get into the police car in his examination before trial; and that his recollection of circumstances of the getting into the car is what he has learned since then. Whatever inconsistencies there might be in the plaintiff's testimony would have to be considered in the full context of his testimony and would only create questions of credibility for the jury. It is readily apparent that on his testimony alone the jury could have found that he was detained by the police and taken into custody. The record also establishes from his testimony and the examination before trial of one of the police officers that the plaintiff was conscious of the confinement as there was a refusal to let him and Dugan out of the car at a certain place after they had requested to get out. The rule is that where a plaintiff is arrested without a warrant, there is a presumption that the detainment is unlawful *(Woodson v New York City Housing Auth., supra,* p 33). While there are questions of fact for the jury, it cannot be said that the jury would not have had a rational basis for finding an arrest, with the plaintiff being conscious of his detention; and without any lawful justification. The plaintiff, as noted above, contended that he did not consent to the confinement, but that he was ordered into the car. Patrolman Gantner testified in his examination before trial that when he arrived at the scene of initial contact with the plaintiff, he observed the deceased Dugan and his brother arguing loudly and using profane language. He told the deceased Dugan and plaintiff that they would have to move on or be arrested. He asked them if they would go somewhere in the car with him and they said yes and got into the car. He described the plaintiff as being intoxicated but not overly so. He conceded that to get rid of intoxicated people the police sometimes just gave them a ride out of town. He admitted that on at least one other occasion he had taken an intoxicated person to the same place out of town that he took plaintiff. He conceded that he had told plaintiff and Dugan to move on or be arrested and they said they had no place to go. A retired police officer testified that when someone was not already in the city jail, they would usually take an intoxicated person out of town and leave him rather than put him in jail.

Upon this record, there is circumstantial evidence sufficient to establish that the plaintiff was taken into custody as a matter of police procedure or at least the jury could so find, and the question of consent would be for the jury. The trial court erred as a matter of law in dismissing the complaint prior to a jury verdict. We, therefore, dissent and vote to reverse and grant a new trial.