ROBERT SARLAT et al., Claimants, *v.* STATE OF NEW YORK, Defendant. (Claim No. 35750.)

Court of Claims, December 2, 1966.

*Bendes, Stark & Amron* (*Paul H. Kirwin* of counsel), for claimants. *Louis J. Lefkowitz, Attorney-General* (*James Brenner* of counsel), for defendant.

CAROLINE K. SIMON, J. Claimants, mother and son, seek damages from the State of New York for injuries sustained by Robert Sarlat in February of 1958 while he was an inmate of Brooklyn State Hospital.

Notice of intention to file a claim was received by the Clerk of the Court of Claims on April 16, 1958. The claim was filed on June 30, 1958, and has neither been assigned nor brought before any other court or tribunal for hearing or determination. The claim was taken from the Suspension Calendar on May 19, 1966.

Robert Sarlat was admitted privately to Columbia Medical Center in July of 1944. Five times thereafter, commencing March 5, 1946, he was admitted to Brooklyn State Hospital, the last admission occurring on December 4, 1956 and continuing until after the time of the incident complained of, which occurred when he was 33 years old.

Hospital records diagnosed his condition upon admission as dementia præcox, catatonic type, and reported his physical health good, his mental state unstable, restless and distractable, and noted his repetitive compulsion to touch people by means of light taps on the shoulder or arm. The supervising psychiatrist of Brooklyn State Hospital noted instructing hospital personnel to understand the patient's needs and to expect and to permit this compulsive touching.

Claimants' bill of particulars asserts that Robert Sarlat was assaulted and beaten by an attendant in the lavatory of Ward 3 of the Male Reception Building sometime between February 19 and February 23, 1958, and sustained a fracture of the left jaw which injury confined him to the surgical section of the hospital for five to six weeks.

After a preliminary inquiry, the court permitted Robert Sarlat to take the stand and to testify as to his recollection of the events leading up to the incident. His testimony was coherent and intelligible, although at variance with his examination before trial as to the date and time of day of the injury.

He testified that a ward attendant encountered him in the lavatory and objected to him tapping his foot on the floor, and threatened to drag him out of the room if it continued. When he resumed the tapping, he testified that the attendant pushed him on his chest and left shoulder toward the window of the room. He stated that he had the desire to touch the attendant, and did so.

Mr. Sarlat testified that the attendant then warned him that he would break his jaw if claimant attempted to touch him again. This then led to an exchange of 16 or 18 blows resulting in his falling onto the floor. The court notes Mr. Sarlat's height is five feet and seven and one-half inches and his weight on the day of the injury at about 125 or 130 pounds as stated in the hospital records introduced into evidence; as well as that the attendant's testimony as to his own height was five feet ten inches and his weight was 198 pounds.

Claimant testified that another attendant came into the room, and that his jaw was bleeding for three hours, his face swollen, and he was put to bed and secured, and was given temporary

medical aid that evening. He was later X-rayed, and the hospital records reflect that the injury was diagnosed as a fracture of the mandible at the region of the condyle.

On February 26, 1958, claimant was transferred to Building No. 10, Ward 53 where the institution's dentist prescribed wiring of the teeth. An orthopedic surgeon performed the procedure as prescribed. Mr. Sarlat was returned to Ward No. 5 on April 17, 1958, and subsequent medical examinations report a complete healing.

Mr. Sarlat stated that he was limited to the eating of soft foods for two and one-half to three months and that he now finds himself unable to open his mouth fully or to yawn, that he has become increasingly nervous, and that as a consequence, he smokes more. His mother testified that his teeth were good prior to the incident, but became out of alignment as a result of it, some being chipped and broken off.

The court was asked by claimant's counsel to view claimant's teeth during the trial, and saw that the teeth were visibly discolored and not in good condition. At the time of the admission to Brooklyn State Hospital the admission records state that the claimant's teeth were in " fair condition ".

Claimant Robert Sarlat, by his own testimony, that of his mother, that of the Superintendent and the psychologists and psychiatrist, had a compulsion to touch people. Robert Sarlat stated that such touching relieved his tensions.

The State, in assuming responsibility for him, took on a task so demanding that his own family frequently could not handle it. In assuming this heavy duty, the State assumed with it the obligation that all those to whom the care of Robert Sarlat was delegated be given full information about him as this would affect his needs and proper care.

There was testimony by the State that all attendants were so informed. Nevertheless, the attendant accused by claimant of the assault, testified that, though often on duty in a ward in which Mr. Robert Sarlat resided, he had been given no such background data on Mr. Sarlat's needs.

The defense produced no explanation of the injury to Mr. Sarlat other than it had been inflicted by another patient. Supporting testimony to substantiate that explanation was not convincing to the court.

The court recognizes that the State is not an insurer of the safety of inmates of its institutions for the mentally ill, and is responsible only for hazards reasonably to be foreseen and only for risks reasonably to be perceived. (See *Palsgraf* v. *Long Is. R. R. Co.*, 248 N. Y. 339, 344; *Excelsior Ins. Co. of N. Y.*

v. *State of New York*, 296 N. Y. 40; *Higgins* v. *State of New York*, 24 A D 2d 147.)

The State, however, must exercise reasonable care to protect its patients from injuries which their history might make it compelling to anticipate would occur, with such attention to their safety and the safety of others as their mental and physical condition, if known, may require, and should be in proportion to the physical or mental ailments of such patients. (See 27 N. Y. Jur., Hospitals and Asylums, §§ 86, 87).

In the instant case, on the evidence before it, the court finds that such care was not exercised when the hospital authorities failed to acquaint all attendants who served in that ward with the condition and propensities of this patient, such failure becoming a competent and producing cause of the assault, and that the State must be held liable for the result.

In assessing damages, the court notes that no evidence was presented as to medical expenses, since the State hospital obtained for Mr. Sarlat the services of an oral surgeon who made the necessary repairs to jaw and teeth.

The court also awards no damages for loss of earnings, since no evidence to substantiate this pecuniary loss was presented during the trial. Though there was a statement as to future dental care, no evidence was presented as to the cost of such care.

Claimants stipulated to the withdrawal from the claim of the item for pecuniary loss of earnings during the trial of the claim.

In the instant claim, the court finds that the patient suffered a painful injury and that the injury was inflicted by an attendant. The court finds that though Mr. Sarlat was not precise or specific as to the date or the time of the injury, he was precise as to the events which caused the injury. The court finds his evidence on the happening credible.

For pain and suffering at the time he was struck and during his period of convalescence, and for residual effects of the injury, the court awards Mr. Sarlat $3,000. The court finds no basis for an award to the patient's mother, Mrs. Ruth Sarlat, since the State has acted *in loco parentis* and no loss of support was alleged or proven, and her part of the claim is hereby dismissed.

Defendant's motions to dismiss for failure to present a prima facie case and for failure to prove claimants' case by a fair preponderance of the credible evidence, made at the conclusion of claimants' case, and again at the end of the trial, on which decision was reserved by the court, are now denied.