SELF ET AL., APPELLANTS, *v.* AMERICAN LEGION POST No. 389 ET AL., APPELLEES.

[Cite as Self v. American Legion (1972),
29 Ohio App. 2d 189.]

(No. 358—Decided March 1, 1972.)

Mr. *Paul T. Theisen*, for appellants.

Messrs. *Davidson, Heckler & Riggs*, for appellee American Legion Post No. 389.

Mr. *Mario C. Ciano* and Messrs. *Hinslea, Reminger & Reminger*, for appellee Columbus Fireworks Display Co.

GRAY, J. This cause is in this court on appeal from a judgment entered upon a directed verdict in favor of defendants, American Legion Post No. 389 and Columbus Fireworks Display Co., in an action filed in the Common Pleas Court of Washington County. Plaintiff feeling aggrieved thereby filed his notice of appeal and assigned the following error:

"The trial court erred in granting defendants' motions for directed verdict at close of plaintiffs' case. The evidence adduced presenting a jury question."

The record reveals that plaintiff, aged 13, in the company of two other boys, aged 11 and 12, picked up a fireworks "bomb" on an athletic field in Beverly, Ohio, and took off the paper wrapper of the bomb exposing a very short fuse. While plaintiff held the bomb, one of the other boys lit it. The bomb exploded in the right hand of plaintiff very seriously damaging it.

The record further shows that the Columbus Fireworks Display Company manufactured most of the fireworks display items. This company delivered the items to the other defendant, The American Legion, which stored them until an hour before the display was set off on July 4, 1967.

The boys went to the athletic field the next day looking for money and unexploded fireworks. One of the boys found the bomb and they agreed to detonate it. We are of the opinion that both judgments on the verdicts should be sustained.

The first problem we encounter is that of connecting the American Legion, which set off the fireworks, with the presence of the bomb on the athletic field. There is evidence in the record that other persons brought fireworks to the field to be set off. The most that can be said for plaintiff in this instance is that individual persons ordinarily do not detonate this kind of bomb and organizations such as The American Legion, when putting on a Fourth of July celebration, generally have such items in their displays. There was at least a 12 hour interval between the time of the American Legion display and the time of discovery of the bomb.

The following question has been presented to us: Should the case have gone to the jury? The plaintiff had to clear five hurdles before this event could occur. The failure to clear any one hurdle would be fatal to his cause of action.

(1) Does the record show by a preponderance of the evidence that the bomb was left on the athletic field by one or both of defendants? (2) Assuming for the purpose of argument that the bomb was left by defendants on the athletic field and that it was found by plaintiff and exploded,

injuring him, was there sufficient evidence to establish a causal connection between defendant's alleged acts and plaintiff's injuries? (3) Assuming affirmative answers to the questions stated in one and two above, was the alleged act of the members of defendant American Legion the direct or proximate cause of plaintiff's injuries? Was the injury to plaintiff foreseeable? (4) Was plaintiff guilty of negligence? (5) Did plaintiff assume the risk of his action?

We are of the opinion that plaintiff has failed to clear any of the five hurdles and hence cannot prevail. First, any case that could be made would have to be made on the *assumption* that the members of the American Legion brought the bomb onto the premises and when it failed to ignite, they cast it aside, and when they policed the area they overlooked it; and that the bomb was found the next day by plaintiff, and exploded by him with resultant injuries. This is as far as we could possibly go on the state of the record. Even then, the facts stated in the record are not sufficient to cause us to say that the bomb was left on the premises by members of the American Legion, especially in view of the fact that other people set off firecrackers at the celebration.

Second, volumes have been written on the subjects of foreseeability, proximate cause, and intervening cause—which questions we next encounter in our analysis of this case. Although direct consequences are not unlimited, they may still be fantastic, and it is not likely that any court would ever carry the direct liability to all of the extreme lengths to which it might lead.

We have researched this question extensively and believe that the case of *Palsgraf* v. *Long Island R. R. Co.* (1928), 248 N. Y. 339, 162 N. E. 99, states the principle that aids us in solving this problem. Chief Judge Cardozo, who wrote the majority opinion, labels the injured party in such a situation as the "unforeseeable plaintiff." In this situation, Judge Cardozo, speaking for a majority of four, held that there was no liability because there was no negligence toward the plaintiff. Negligence, he said, was a matter of relation between the parties, which must be

founded upon the foreseeability of harm to the person in fact injured.

The real problem, the one to which attention should be directed, would seem to be one of social policy; that is, whether the defendants in such cases should bear the heavy negligence losses of a complex civilization, rather than the individual plaintiff.

It is still inconceivable that any defendant should be held liable in infinity for all of the consequences which flow from his act, and some boundary must be set. Stated in another way, it can be said that the possibilities of intervening causes which may enlarge the consequences at some later time are virtually infinite, and the necessity for some restriction obviously is essential.

There is virtually unanimous agreement that liability must be limited to cover only those intervening causes which lie within the scope of the foreseeable risk, or have at least some reasonable connection with it. This is based upon a recognition of the fact that the independent causes which may intervene to change the situation created by a tortfeasor are infinite, and that, as a practical matter, responsibility simply cannot be carried to ultimate lengths. Therefore, in general, when a third person becomes aware of the danger, and is in a position to deal with it, the tortfeasor will be free to assume that he would act reasonably. We do not think that plaintiff acted in a reasonable manner.

Plaintiff testified as follows:

"Q. And when Tom stopped you, whose suggestion was it to light it?

"A. Mine.

"Q. When you got behind the shed and Tom took the match to light it, I understand your intention was to lope (sic) it. Is that correct?

"A. Just lope (sic) it and get it up in the air was the idea.

"Q. Where were you going to throw it to?

"A. Toward the middle of the field.

"Q. Was anybody out in that area?

"A. No, it was vacant.

"Q. Did you have your arms cocked to do that?

"A. I was holding it out.

"Q. When it exploded was it in your hand?

"A. Still in my hand.

"Q. So you couldn't even get rid of the thing before it went off?

"A. Yes.

"Q. Why were you going to throw it?

"A. Why?

"Q. I am not being smart. I just really want to know why you thought you had to throw it?

"A. Because I knew it would explode.

"Q. You knew it would explode?

"A. Yes.

"Q. Did you think there might be some risk involved in that?

"A. I never thought at that time there would be.

"Q. You knew it would explode and you knew you needed to throw it?

"A. Right."

We now address ourselves to the assertion of defendants that plaintiff was guilty of contributory negligence and assumption of the risk. First, we must find that there was negligence on the part of one or both defendants before we can find contributory negligence on the part of the plaintiff. We do not make such a finding. However, again, for the purpose of argument, let us assume that either one or both defendants were guilty of negligence. Was plaintiff guilty of contributory negligence? Where contributory negligence and assumption of the risk have been distinguished, the traditional basis of the distinction has been as follows: assumption of the risk is a matter of knowledge of the danger and an intelligent acquiescence in it, while contributory negligence is a matter of some fault or departure from the standard of conduct of the reasonable man, however unaware, unwilling, or even protesting the injured party may have been. Obviously, the two may coexist when the plaintiff makes an unreasonable choice to incur the risk, but either may exist without the other.

It must be pointed out that, in the present case, plaintiff's conduct in encountering a known risk may have been in itself unreasonable because the danger was out of all proportion to the advantage which he was seeking to obtain.

This is a case where negligence arose when plaintiff, confronted with two choices, made the wrong choice and voluntarily encountered a known and unreasonable risk. Thus, the defenses of assumption of the risk and negligence overlap, and neither excludes the possibility of the other. They are available to defendants in this case.

According to our theory of the case, plaintiff cannot prevail in any event. Therefore, the judgment of the trial court is affirmed.

*Judgment affirmed.*

ABELE, P. J., concurs.

STEPHENSON, J., concurs in the judgment as to Columbus Fireworks Display Co., and dissents as to the judgment regarding American Legion Post No. 389.