DECISION
Plaintiff-appellant, Andrew May, appeals from a judgment of the Ohio Court of Claims in favor of defendant-appellee, Department of Rehabilitation and Correction, on plaintiff's complaint in negligence. Because the trial court erred in finding plaintiff's negligence exceeded that of defendant, we reverse.
Plaintiff has been incarcerated at the London Correctional Institution ("LCI") since 1985. On December 21, 1995, plaintiff, along with a group of other inmates, was preparing to walk to work at the garment factory on the premises of LCI. Called out to work at about 8:00 a.m., plaintiff lined up with other inmates in the yard.
Due to the unavailability of the usual road taken to the garment factory, the inmates were asked to go through the coal yard, off the roadway. Conditions in the yard were "very slick." (Tr. 76.) Two days before, LCI had seen such high wind, rain, and ice that by 1:30 p.m. all of the inmates were taken inside due to blizzard-type conditions. The next day was sunny and cold with snow drifts "all around"; temperature was in the twenties. By December 21, snow had covered the ice, making the weather conditions dangerous. Indeed, James Gordon, the Ohio Penal Industries' superintendent at LCI, discussed the weather conditions with Captain Day on December 21 and decided he would not have work called that day because the grounds were so hazardous. Mr. Armbrister, Gordon's superior, overruled the decision and the inmates had been called to work.
Walking was hampered by the weather conditions, but made more difficult by the route the inmates were to follow through the coal yard. Coal trucks regularly went in and out of the coal yard, creating ruts in the yard. With the weather conditions experienced in the days immediately preceding December 21, 1995, those ruts had filled with ice and were covered with snow. No salt had been put down, and the area was "icy, very icy." (Tr. 71.)
As the inmates started to the garment factory, all had trouble walking. Not only were the inmates slipping and sliding, but Gordon fell down once. While everyone attempted to walk carefully, it was difficult to avoid the holes and ruts because they were filled with ice and the snow was blowing. Plaintiff stepped down into a shallow rut or pothole and fell. Others who saw the incident testified plaintiff went straight down and his feet went out from under him. Gordon testified another inmate fell, and he himself had trouble standing up at the spot where plaintiff fell.
Plaintiff could not refuse to work, despite the weather conditions. Had he done so, he would have been written up for a violation and placed in isolation. The shoes he was given were slick, made with neoprene soles. Neither salt nor boots were available. Moreover, given the weather conditions, salt would have been ineffective.
As a result of his fall, plaintiff alleges he sustained personal injury. He filed a complaint against defendant on May 25, 1999, alleging his fall was proximately caused by the negligence of defendant's employees who negligently maintained the path plaintiff was required to traverse. Following a bench trial, the court issued a decision finding defendant breached its duty of reasonable care to plaintiff. In so ruling, the trial court noted that defendant knew of the hazardous condition of the alternate route the inmates were required to take and of the adverse weather conditions, but nonetheless "chose to transport the inmates to work." (Decision, p. 3.) Further, the trial court concluded defendant "did not take adequate measures to protect the safety of the inmates before or during the walk to the garment factory." Id.
In examining the issue of plaintiff's own negligence, the court noted that a person who chooses to travel a natural accumulation of ice or snow is generally presumed to have assumed the risk of his or her actions. Observing, however, that plaintiff had no opportunity to refrain from walking to the garment factory, the court found plaintiff's performance of the assigned task did not evidence an assumption of the risk.
Continuing, the court noted that plaintiff nonetheless was required to exercise some degree of care for his own safety. The court concluded "plaintiff failed to exercise a reasonable degree of care when he slipped on the ice en route to the garment factory. Plaintiff had passed over the area in question on at least eight occasions prior to his accident. Therefore, the dangerous condition that the ruts and holes alone could present was apparent and, when combined with adverse weather conditions, plaintiff should have known that a greater degree of caution was required when traversing the area." (Decision, p. 5.) Finding plaintiff's own negligence exceeded any negligence on defendant's behalf, the court rendered judgment in favor of defendant. Plaintiff appeals, assigning the following error:
 THE COURT OF CLAIMS ERRED IN HOLDING THAT PLAINTIFF ANDREW MAY WAS GUILTY OF CONTRIBUTORY NEGLIGENCE.
In his single assignment of error, plaintiff contends the trial court erred in concluding he was contributorily negligent. Contributory negligence is an affirmative defense for which defendant bears the burden of proof. Valencic v. The Akron Barberton Belt Rd. Co. (1938),133 Ohio St. 287, 289. Here, contributory negligence means "any want of ordinary care on the part of the person injured, which combined and concurred with the defendant's negligence and contributed to the injury as a proximate cause thereof, and as an element without which the injury would not have occurred." Brinkmoeller v. Wilson (1975), 41 Ohio St.2d 223,226. Contributory negligence generally involves "some fault or departure from the standard of conduct of the reasonable man * * *." Self v. American Legion (1972), 29 Ohio App.2d 189, 193.
The record fails to disclose evidence of plaintiff's contributory negligence. The grounds were icy and dangerous. Ruts and grooves caused by coal trucks going in and out of the coal yard had filled with ice and were covered with snow, rendering it difficult, if not impossible, to detect dangerous spots in the yard. Plaintiff wore shoes prescribed for him; boots, more suited to the weather conditions, were not available to him. All those factors were beyond plaintiff's control. Moreover, no evidence suggests plaintiff was walking carelessly, too quickly, or unobservedly. Indeed, all of the inmates were having difficulty walking and, according to Gordon, another inmate fell.
In an attempt to note evidence of plaintiff's own negligence, defendant suggests plaintiff was negligent for not having huddled with the other inmates, when he could have had support from them. Defendant, who bears the burden of proof on plaintiff's negligence, failed to present evidence that plaintiff had an opportunity to walk with anyone else to the garment factory or to derive physical support from anyone else on the trek through the coal yard.
In the final analysis, the trial court's opinion seems to suggest that had plaintiff been careful, he would not have fallen. The record, however, does not indicate plaintiff was anything but careful. Furthermore, dangerous conditions may precipitate a fall even when caution is used. Given the lack of evidence that plaintiff failed to use ordinary care in walking to the garment factory, the record allows only a conclusion that the dangerous conditions of the yard, and not plaintiff's "departure from the standard of conduct of the reasonable [person]," caused plaintiff to fall.
Accordingly, plaintiff's single assignment of error is sustained, and the judgment of the Ohio Court of Claims is reversed. This matter is remanded with instructions to enter judgment for plaintiff on the issue of liability and to conduct a damages hearing.
 _______________________ BRYANT, P.J.
DESHLER and PETREE, JJ., concur.