■ MICHAEL GREGGO, Respondent, v CITY OF ALBANY, Appellant.—Appeal from a judgment of the Supreme Court, entered July 1, 1976 in Albany County, upon a verdict rendered at a Trial Term in favor of plaintiff. At 10:00 P.M. on November 1, 1973, the plaintiff was shot in the right shoulder as he was backing his car out of his driveway on Delaware Avenue in the City of Albany. The bullet had come from a gun fired by Alton Smith, a college student. Smith testified that he was returning to his dormitory and stopped his car on Delaware Avenue to obtain pizza. When he returned to his car, he testified he bent over to check some dents on his right fender. He then heard the sound of squeaking wheels and observed an unmarked car stop. He heard the words "Hey, nigger" as the two occupants approached him. They grabbed him without showing him any kind of identification. As he called out "Help, police", he was dragged toward the rear seat of their car. Smith contends that one of the men said "We are the cops", but showed no identification. Smith pushed the man, bit his wrist, broke loose, and ran for his car. The younger man caught him, threw him to the ground, and pinned him with his arm behind his back. The other man then said "I'm going to kill you, nigger". Smith claims that one of them then beat him over the head with a metallic steel object. As Smith continued to cry out "Help, police. Oh, God. Somebody help me", it was his contention that the beating continued, causing him to suffer head injuries. Smith testified that he then saw a pistol in front of him on the ground which he grabbed and fired twice, allegedly to attract attention and help. The gun was taken from Smith's hand. A uniformed policeman arrived at the scene but failed to help Smith. He said "nigger" and kicked him. Smith was then handcuffed and placed in a van. Smith testified that he did not recognize Manion and Tobin, the two men who grabbed him, to be police officers since they were not in uniform. Detective Tobin admitted he never identified himself as a police officer when he approached Smith. The officer testified that they wanted to stop Smith to request him to show identification and account for his activities. Officer Manion testified that as he approached Smith, Smith struck him. Accepting the officers' testimony about Smith's conduct prior to the time the police officers decided to approach him, we conclude that the police were not justified in stopping Smith, since none of Smith's actions gave rise to a reasonable suspicion that he was involved in criminal activity. Moreover,

Smith was not charged with a crime growing out of his actions prior to the time he allegedly hit Manion. Much of Smith's testimony was corroborated by eyewitnesses to the incident. These witnesses heard Smith call out "Get the cops" and "Help, Police". Joseph Vogl testified that he observed the struggle from his window and as they were fighting, he saw a gun fall out and when it fell to the ground, Smith grabbed it and a shot went off. We note that there was considerable testimony on behalf of the defendant, tending to show a different version of the facts. Our function is limited to determining whether the conclusion of the jury was a permissible one from facts which they could have found on the basis of evidence in the record. Our review of the evidence convinces us that on the evidence the jury could properly return a verdict in favor of plaintiff upon either of two different theories of negligence. First, the jury could find, based upon Smith's testimony, that after Manion had pushed him to the ground with one of Smith's arms pulled behind him, Manion pulled his gun out of his holster and began to beat Smith over the head with it. From this testimony the jury was entitled to conclude that the use of the gun in that manner was unreasonable and unjustified under the circumstances. Smith was slightly built while the police officers were taller and heavier. Furthermore, the jury could properly find that Manion's use of his gun was negligent because he created an unreasonable risk that it would fall from his hand to the ground where Smith could grab it and fire it, injuring an innocent bystander within gunshot range. Since the plaintiff's gunshot injury was well within the scope of the risk created by Manion's negligence, the jury could find his negligence to be the proximate cause of the plaintiff's injury (*Palsgraf v Long Is. R. R. Co.,* 248 NY 339). The jury was also entitled to proceed upon a second theory of negligence. They could reasonably conclude from the testimony that Tobin and Manion approached Smith, grabbed him without identifying themselves as police officers and without informing him that they only wanted to talk to him. Neither of the police officers had probable cause to arrest Smith for a crime or even a reasonable suspicion that Smith had committed, was committing, or was about to commit a crime. The jury was also entitled to conclude that the only thing the police officers said prior to grabbing Smith was "Hey, nigger". From all the evidence the jury could reasonably find that the manner in which the police officers initiated the confrontation with Smith constituted negligence because it created the unreasonable risks that Smith would believe that he was being accosted by two criminals, that he would resist, and that through his resistance he would somehow come into possession of one of the officers' guns, which he might use to the detriment of any innocent bystander within gunshot range. Since the plaintiff's injury was well within the scope of the risk created by the police officers' negligent acts, their negligence was the proximate cause of plaintiff's injury (*Parvi v City of Kingston,* 41 NY2d 553; *Palsgraf v Long Is. R. R. Co.,* 248 NY 339, *supra).* Judgment affirmed, with costs. Greenblott, J. P., Kane, Mahoney, Main and Herlihy, JJ., concur.