O’Neill, J.,
dissenting.
{¶ 41} I respectfully dissent from the majority in this case. The holdings of the Fourth District Court of Appeals and the Pickaway County Court of Common Pleas granting summary judgment to the city of Circleville should be reversed, and this case should be remanded for trial. I agree wholeheartedly with the letter, spirit, and intent of most recreational-user statutes. This court has said that the purpose of Ohio’s recreational-user statute is “ ‘to encourage owners of premises suitable for recreational pursuits to open their land to public use without worry about liability.’ ” Marrek v. Cleveland Metroparks Bd. of Commrs., 9 Ohio St.3d 194, 198, 459 N.E.2d 873 (1984), quoting Moss v. Dept. of Natural Resources, 62 Ohio St.2d 138, 142, 404 N.E.2d 742 (1980). There is no question that a swimming-pool owner would simply close the pool if every child who slipped on the wet pavement was entitled to litigate his boo-boo for years in a court of competent jurisdiction. However, when, as here, a property owner converts a recreational park to a municipal dump site for construction fill and debris, there is no statute in the land that should shield that tortfeasor from accountability for such a disastrous action. As stated so eloquently by Justice Cardozo in Palsgraf: “The risk reasonably to be perceived defines the duty to be obeyed.” (Emphasis added.) Palsgraf v. Long Island RR. Co., 248 N.Y. 339, 344, 162 N.E. 99 (1928).
{¶ 42} In Miller v. Dayton, 42 Ohio St.3d 113, 537 N.E.2d 1294 (1989), this court extended recreational-user immunity to improvements made to property. We said that the
significant query is whether such improvements change the character of the premises and put the property outside the protection of the recreation *221 al-user statute. To consider the question from a different perspective: Are the improvements and man-made structures consistent with the purpose envisioned by the legislature in its grant of immunity? In other words, are the premises (viewed as a whole) those which users enter upon “ * * * to hunt, fish, trap, hike, swim, or engage in other recreational pursuits?”
Id. at 114-115 (quoting R.C. 1533.18(A)).
{¶ 43} The majority asserts that our holding in Miller requires that the property be viewed as a whole, and only when the “essential character” of the entire property has been altered to something other than an outdoor property on which outdoor recreational activities occur does immunity fall away. Majority opinion at ¶ 36. The opinion goes on to say that “[w]hen viewing the park property ‘as a whole,’ the existence of a single railroad tie does not change the essential character of the park to something other than a property that is open for recreational use.”' Majority opinion at ¶ 37. Even if the majority’s overreliance on the words “as a whole” is correct — and it is not — I disagree. And let’s be accurate here — we are not talking about a single railroad tie. That tie that crippled this child was part of an overall scheme of disposal of huge mounds of debris that the city had incredibly decided to place in the middle of a recreational park! Cover it with a light dressing of snow, and the perfect killing field was created. I would hold, as a matter of law, that when the owner of a property that enjoys the immunity granted by the people of Ohio for recreational purposes makes a conscious decision to use the property for other purposes, the immunity ceases. See Huffman v. Willoughby, 11th Dist. Lake No. 2007-L-040, 2007-Ohio-7120, 2007 WL 4564384, ¶ 50 (a lowhead dam “was not an improvement that was made to encourage the recreational use of this part of the river. Instead, * * * it made that part of the river inherently dangerous and thus not suitable for recreational use”); Vinar v. Bexley, 142 Ohio App.3d 341, 755 N.E.2d 922 (10th Dist.2001) (because a roadway through a park was available to the public for travel not related to a recreational use, recreational-user immunity under R.C. 1533.181 is inapplicable). See also Smith v. S. Pacific Transp. Co., Inc., 467 So.2d 70, 73 (La.App.1985) (when persons are allowed to use the property for purposes not associated with recreational activities, the statutes should not apply). To hold otherwise would be to suggest, for example, that the city could store hazardous waste alongside the running track, or possibly it could release wild animals from the city zoo into the park area in the hopes that they would find dinner on their own. Would the current state of the law in Ohio absolve such conduct, possibly with the addition of attractive signs cautioning the children to “play at your own risk”?
*222 Bashein & Bashein Co., L.P.A., and W. Craig Bashein; and Paul W. Flowers Co., L.P.A., and Paul W. Flowers; and George R. Oryshkewych, for appellants.
Mazanec, Raskin & Ryder Co., L.P.A., John T. McLandrich, Todd M. Raskin, and Frank H. Scialdone; and Law Offices of Douglas J. May and Patrick J. Deininger, for appellee.
Elk & Elk Co., Ltd., and Kimberly C. Young, urging reversal for amicus curiae Ohio Association for Justice.
Roetzel & Andress, L.P.A., and Stephen W. Funk, urging affirmance for amicus curiae Ohio Association of Civil Trial Attorneys.
Isacc, Brandt, Ledman & Teetor, L.L.P., Mark Landis, and Aaron M. Glasgow, urging affirmance for amici curiae County Commissioners Association of Ohio, Ohio Township Association, and Ohio Parks and Recreation Association.
Ice Miller L.L.P., Philip Hartmann, Rebecca K. Schaltenbrand, and Stephen J. Smith; and John Gotherman, urging affirmance for amicus curiae Ohio Municipal League.
{¶ 44} In my opinion, it is wholly irrelevant to focus any attention whatsoever on the actions or the knowledge of the injured child. The city made a decision to dump huge mounds of debris into a city-owned park. When it did that, it lost its “recreational user” immunity entirely. Accordingly, I respectfully dissent.
Pfeifer, J., concurs in the foregoing opinion.